† DUNCAN & als. versus REED.

In case of the loss of a vessel, the captain is bound to dispose of the wreck to the best advantage of the owners, and his duties do not cease until the proceeds which may be saved are placed at their disposal.

While so employed in their interests, he is entitled to a reasonable compensation and necessary incidental expenses.

For expenses of board and medical services in his behalf the owners are liable.

Nor can they refuse the allowance of expenses which have been included in the general average, and of which they have received the benefit.

But for errors committed by the captain through his own fault only, the owners are not responsible to him.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding. ASSUMPSIT.

This action was brought by the owners of brig Mechanic against the master, to recover moneys alleged to have been detained in his hands belonging to them.

The brig sailed from Bath to New York, and from there was bound for Gatoon on the Chagres river, and was

stranded at its mouth. She was condemned and sold upon the beach.

The captain returned with the avails to New York.

The action was referred to an auditor who made an *alternative* report. If the plaintiffs' view of the case was correct, there was due from the captain $168. If the defendant's claims were allowed, the balance was in his favor. The claims of the latter were for physicians' bills at Chagres, and board after the loss of the vessel, his passage to New York, and a deficiency of the funds he brought to New York of $120, which he alleged was occasioned by his not being able to count it at Chagres on account of sickness.

The charge for passage home was allowed by the insurers.

The case was referred to the full Court to make up a legal judgment.

*Evans,* for defendant, contended that the report was inconclusive, and should be recommitted for further proceedings. *Merriam* v. *Merriam,* 6 Cush. 91.

That claim for medical services should have been allowed. *The George,* 1 Sum. 151. Also the passage home; it was allowed by the insurers. *The Dawn,* Davis' R. 1.

The proof was insufficient to charge defendant with receiving a larger sum at Chagres than he paid at New York. It was only the account of the merchant, and was inadmissible. The *onus* was on plaintiffs.

*Randall,* for plaintiffs.

RICE, J. — The facts reported in this case are very meager. It is presented upon the auditor's alternative report, without any statement of the evidence bearing upon the controverted items in the account. We are thus left to infer the facts from the general character of the business between the parties, and the nature of the items in controversy, rather than from any direct proofs in the case.

There are certain general principles applicable to cases similar to the one before us which will aid in solving, satisfactorily, most of the questions presented.

It seems that the brig Mechanic, of which the plaintiffs were owners, and the defendant master, on a voyage from New York to Chagres, was stranded at the latter port, and lost, before the delivery of her cargo, and that the wreck was sold, and the whole business closed up, at that place, December 11, 1850, and the proceeds of the property sold, brought by the master to New York, for the benefit of the owners.

While at Chagres, and on his passage to New York, the captain was sick and incurred, and paid, physicians' bills to the amount of fourteen dollars. The plaintiffs object to the allowance of those items.

The expenses of curing a sick seaman, in the course of a voyage, is a charge on the ship, by the maritime law; and in this charge are included not only medicine and medical advice, but nursing, diet and lodging, if the seaman be carried ashore. *Hamden* v. *Gordon & al.*, 2 Mason, 541.

The Act of Congress of 1790, c. 29, § 8, providing that there shall be kept on board of every ship or vessel of a certain specified tonnage, a chest of medicines, &c., does not apply to cases where seamen are removed on shore, and are deprived of the benefits secured by the Act. *Ibid.* The same rule has been held to apply in case of the sickness of the master, as of seamen. *The brig George*, 1 Sum. 151.

In this case, the ship having been stranded and lost, the master must of necessity, have subsisted on shore, and the legitimate inference is, that he could not avail himself of the benefits of the medicine chest.

The powers and duties of shipmasters, especially when in foreign ports, and in cases of disaster, either from the dangers of the sea, or public enemies, are very extensive. They are then the general agents of the owners, so far as respects acts necessary to the successful prosecution of their voyage. Their authority extends to the hypothecation of the ship, for necessary repairs, or in case of severe disaster and urgent necessity, to the sale of the ship itself. *Gordon* v.

*Mass. F. & M. Ins. Co.*, 2 Pick. 249 ; *Hall* v. *Frank. Ins. Co.*, 3 Pick. 466 ; *The Sarah Ann*, 3 Sum. 206.

He must faithfully discharge every duty incumbent upon him, and render a satisfactory account of all his transactions, that he should receive a stipulated sum as wages, and be secured in all his advances that do not exceed the value of the vessel, or the authority of the owner. Jacobsen's Sea Laws, by Frick, B. 2, c. 1, p. 87.

· In case of capture, it is the imperative duty of the master to remain by the ship until a condemnation, and all hope of recovery is gone. He is intrusted with the authority and obligation to interpose a claim for the property, and to endeavor by all the means in his power, to make a just and successful defence. To abandon the ship to her fate, without asserting any claim, would be criminal neglect of duty, and subject him to heavy damages for a wanton sacrifice of the property. As the law compels him to remain by the ship, and attaches him in some sort to her fate, he is entitled to receive compensation for his services and incidental expenses, and this compensation is a charge to be borne, in the first instance, by the owner of the ship, and ultimately as a general average, by all parties in interest. *Wilson & ux.* v. *Dorr*, 3 Mass. 161.

The principles of the above rule are equally applicable in cases of loss by the dangers of the sea. The master must abide by the ship to the last, and save her if practicable, and if not, so dispose of the wreck as that the owners may realize the most that can be saved therefrom. His duty therefore, in case of disaster, does not close until the ship is in a place of safety, and the voyage ended, or in case of loss, until the proceeds which may be saved, are placed at the disposal of the owners.

But these duties carry with them corresponding rights, and among them is the right to reasonable compensation for services rendered, and incidental expenses incurred while thus in the service of the owners. These rights and duties

enter into, and form a part of every contract between master and owners.

In the case at bar, the services of the master do not seem to have terminated until he arrived in New York, and delivered the proceeds received from the sale of the wreck of the brig. To that point of time we think he was fairly entitled to remuneration for his necessary incidental expenses in the prosecution of the business of .the owners, in the charge of their property. In these expenses the items charged for physicians' bills, board, and the amount paid for his passage are properly included. The owners surely are not in a position in equity and good conscience to resist the allowance of those items which have been included in the general average, and of which they have therefore received the benefit, as is the case of the charge for his passage to New York.

As to the charge for deficiency in the amount of money brought home by him, we do not perceive any authority for making these charges against the owners. As we understand the case, he himself presented the evidence of the amount he had received in Chagres, and if it did not hold out on a recount, it is his misfortune, or his fault; and for that deficiency he must look to the parties with whom he transacted the business. At all events he cannot properly charge the owners therewith until he presents some evidence that the loss was not occasioned by any fault on his part.

Correcting the account of the auditor according to the above principles, there will be found a balance due the plaintiffs of nineteen dollars and ninety-five cents, with interest thereon from the date of their writ, and for that sum they are to have judgment.

## COUNTY OF LINCOLN.