# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## J. L. MOREWITZ V. THE SOCIETE NATIONALE D'AFFRETEMENTS, A FOREIGN CORPORATION, ETC.

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

*J. L. Morewitz* and *Harry H. Kanter*, for the plaintiff in error.

*Hughes, Little & Seawell*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action by attachment was brought by J. L. Morewitz to recover of the defendant the sum of $500.00 upon an alleged parol contract for services rendered as attorney.

In April, 1924, the French steamship "P. L. M. No. 21," owned by the defendant, docked at Newport News, Virginia, for the purpose of loading a cargo of coal. On board the vessel were twenty alien stowaways who were landed without the knowledge of the immigration officials, in violation of the Federal immigration laws. Upon discovery of said violation, Federal officials instituted an investigation to ascertain which of the ship's crew had been instrumental in smuggling the aliens aboard ship. This investigation extended over a period of several days and during the hearing before the commissioner one Djub, a fireman who had been identified by some of the aliens as the one responsible for their presence on the ship, was arrested, and in default of bail, was placed in jail in Newport News. Thereupon the plaintiff was consulted in regard to Djub's defense.

Up to this period only Djub had been implicated. The district attorney, however, was dissatisfied with the turn of events and threatened to imprison the ship's crew, including the master, Captain Bourge. This action would have resulted in keeping the ship in port indefinitely, at an approximate cost of two hundred dollars per day. With this eventuality in prospect, in an interview with the plaintiff in the presence of Bruce McIntyre, agent of the Bernard-White Company which was loading the coal, the master, Captain Bourge (as stated by McIntyre when testifying as a witness) "* * told Mr. Morewitz that he would take care of Mr. Morewitz's fee for representing Djub in the Federal court if Djub would testify before the commissioner with regard to all those that were implicated in smuggling in the aliens. * * * Captain Bourge was anxious to save his owner the loss of time that would be necessary to recruit a new set of officers and crew for his vessel and when he approached Mr. Morewitz explained this situation to him."

Up to that time Djub, upon advice of counsel, had refrained from making any statement, on the ground that

his testimony would be self-incriminatory. Plaintiff, how-
ever, representing Djub (as he states at the instance of
the master) sought terms with the district attorney whereby
his client would be dealt with leniently if he would turn
"State's evidence." To this proposition the attorney re-
plied: "I told him I was unable to do anything more than
leave the matter up to the judge." Thereafter, without
any promise of immunity, Djub did make a statement
implicating the chief engineer who was thereupon detained
by the authorities, and at the instance of the master, the
ship was made ready to sail. While the master was in the
act of signing a draft drawn upon the owners for the benefit
of plaintiff, he was arrested for complicity in the offense,
upon information furnished by the ship's chief officer. The
master was subsequently tried and convicted, for which
he served a prison term. Djub, upon a plea of guilty, was
sentenced to serve six months in jail. The owners of the
ship denied liability for the plaintiff's fee and this action
by attachment was instituted. During the trial McIntyre
further testified that he was familiar with the general cus-
tom whereby a ship's master, in order to save the vessel
from being delayed, would make arrangements in behalf
of its owners with that purpose in view; also, that "under
the circumstances as they appeared, the captain was well
justified in agreeing to pay Mr. Morewitz's fee." No
objection was interposed to the foregoing statement.

After the evidence was in, the court gave this instruction:

"The court instructs the jury as a matter of law that
there is no evidence, express or implied, in this case of any
contract with the plaintiff binding upon the owner and for
which it is liable."

The jury disregarded this mandatory instruction and
returned a verdict for the plaintiff, which, on the 13th day
of February, 1929, was set aside by the court, and judgment
was rendered in favor of the defendant. This action of
the court is assigned as error.

■ In our opinion no question of maritime law is involved in this controversy. The relation existing between the master and the owner is that of principal and agent and the rule applicable is that applied to such a situation.

In *24 R. C. L.*, page 1134, the extent of the master's authority to bind the owner is thus stated:

■ "In the absence of known fraud or limitation of authority, he is the confidential agent of the owners in the navigation and management of the ship, with general authority to bind them by his acts and contracts relative to her usual employment. It accordingly follows that the owners are answerable for his contracts and torts on behalf of the vessel, and liable for the faithful performance of every duty undertaken by him, within the actual or apparent scope of his authority, regardless of their secret instructions inconsistent with the authority with which he appears to be clothed."

■■ Here the question is not whether the master had express or implied authority to employ an attorney, but whether or not within the apparent scope of his authority plaintiff could contract with him to perform a service which not only might but actually did inure to the benefit of the owner. The apparent emergency facing the master was the restraint of the ship for an indefinite period at a cost of two hundred dollars a day. The law is well settled that a master is authorized to intervene for the defense of the ship in legal proceedings against her. *Duncan* v. *Reed*, 39 Me. 415, 63 Am. Dec. 635. We are dealing with a situation where not only loss would ensue by reason of detention, but the ship, by reason of the crew's illegal conduct, was placed in a position to be confiscated or the owner amenable to the imposition of fines aggregating more than $20,000.00. In our opinion, under the circumstances, it was the apparent duty of the master to clear the ship. Plaintiff was advised by the master that time was the

essence of the situation, and relying no doubt on the apparent scope of the master's authority, he rendered valuable service to the ship's owner.

■ There is no suggestion in the record of any collusion between the plaintiff and the master. The result which followed the advice of plaintiff to Djub, that he divulge the identity of the guilty seamen, was meant to inure to the owner's benefit. "Under such circumstances, the presence or absence of authority in point of fact is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same." *Bronson* v. *Chappell*, 12 Wall. 683, 20 L. Ed. 436.

For the reasons stated, the judgment of the trial court will be set aside and annulled and judgment will be entered by this court in favor of J. L. Morewitz, for the sum of $500.00 with legal interest thereon from September 15, 1925, until paid.

*Reversed.*