## LIBBEY v. HARNEY.

MECHANICS' LIEN; ARCHITECTS; PRINCIPAL AND AGENT.

A materialman who, having refused a building contractor credit, furnished materials upon an order of the contractor on the architect to pay for the materials, and to deduct the amount from the contract price, which order was accepted by the architect as agent for the owner, who subsequently approved his act, is entitled to a mechanics' lien.

No. 2563. Submitted November 5, 1913. Decided December 1, 1913.

HEARING on an appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia sitting as a court of equity, in defendants' favor in a suit to enforce a mechanics' lien.                                   *Reversed.*

The facts are stated in the opinion.

*Mr. D. S. Mackall* and *Mr. B. D. Boteler* for the appellants.

*Mr. William H. Robeson* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellants, Francis B. Libbey and John E. Libbey, copartners trading as Libbey Brothers, filed a bill in the supreme court of the District of Columbia against Mary J. Harney and other defendants to enforce a mechanics' lien. The claim is

for a balance alleged to be due for lumber and millwork used in a dwelling house constructed by defendant Harney. It is conceded that plaintiffs furnished the materials for said building, and that they were used therein. From a decree in favor of defendants, this appeal was prosecuted.

It appears that one N. T. Haller, an architect in this city, was employed by defendant Harney to prepare, and did prepare, plans and specifications for the building. Thereafter, a contract was made between Harney and one Degges for the construction by the latter of said building according to the plans and specifications, and by the terms of the contract payments were to be made from time to time to Degges on the estimates of Haller as architect. Upon securing the contract, Degges sought to obtain materials from plaintiffs for carrying out said contract, but they refused to extend him credit. Thereupon, Haller and Degges entered into an arrangement with plaintiffs to furnish the lumber and millwork for the building upon the following accepted order:

Washington, D. C., March 1, '11.

Mr. N. T. Haller, Ag't:—

Please pay to the order of Libbey Brothers, the sum of $845.-32; it being in full for amount of their estimate for lumber and millwork delivered to Brookland, District of Columbia, for Miss Mary J. Harney house, and deduct said sum from amount of my contract for said building.

James R. Degges,
Contractor, Builder.

Accepted,
    N. T. Haller,
      Ag't Mary J. Harney.

Pursuant to this agreement, plaintiffs continued to furnish the materials during the construction of the house, covering a period from March 6 to September 20, 1911. The amount totaled $996.62, upon which there was paid on account, on May 10th, the sum of $250.

The court below found "that Haller had no authority except that of architect to supervise the construction of the building, and to disburse her (defendant's) money in accordance with the terms of the building contract." It was held therefore that "Haller had no authority to bind Miss Harney by contracts of any kind, and he never pretended to her that he had." It is of little moment what pretensions Haller made to defendant, unless their relations were so apparent as to put plaintiffs upon notice of Haller's lack of authority. Defendant was absent from Washington during the greater part of the time the building was being constructed, and to all outside appearances Haller was her representative in full charge. On March 30th, Haller wrote defendant that Degges was young, inexperienced, and without credit, and that he had gone "security for the millwork, lumber, and brickwork, and several other small accounts." On April 19th, defendant wrote Haller as follows: "You, Mr. Haller, can handle the whole matter in your own way; there will be no more interference or delay in drafts."

Defendant returned to Washington in the early part of June, and testifies that she then knew the lumber was being furnished by plaintiffs. Reference to the account discloses that almost one half of the lumber was delivered after this time. It was being delivered while defendant was here, and with her knowledge. She further testifies that up to June 10th she had paid to Haller $3,000, and that she relied upon his paying the bills as they came due, and it appears that, from time to time, he did pay out money during the construction of the building. Her only excuse now for not investigating as to the condition of plaintiffs' account is that she relied upon Haller doing it for her.

With knowledge of these facts, defendant is not in position to repudiate plaintiffs' claim. Haller was defendant's agent, and it is not important as to her understanding of the scope of his agency, so long as she acquiesced in, and received the benefits of, his acts to an extent which would justify the public in believing that she had authorized him to act in that capacity. Assuming that Haller was nothing more than the architect, it

has been held that where the architect purchases material on the credit of the owner, with the latter's knowledge and consent, the owner will be deemed to have ratified the transaction, and be liable. *Crockett* v. *Chattahoochee Brick Co.* 95 Ga. 540, 21 S. E. 42. Haller testified that he was defendant's agent with full authority to contract for defendant in connection with the erection of the building. But whatever his understanding may have been, the record discloses that his agency was of that general character which would indicate to plaintiffs, in his dealings with them, that he was, at least, apparently acting within the scope of his authority. Defendant knew that Haller had contracted with plaintiffs for the lumber, and had guaranteed payment. Without protest or notice to them of any intention on her part to repudiate Haller's authority in the premises, she accepted the lumber and used it in the construction of her building. If she permitted Haller to dissipate the funds she had advanced, instead of applying them to the payment of the obligations incurred, her neglect cannot be imputed to plaintiffs, who, in good faith, carried out their part of the agreement.

It is therefore of little or no importance, in the light of subsequent events, what authority Haller had when the agreement was originally made with plaintiffs. "Agents are special, general, or universal. Where written evidence of their appointment is not required, it may be implied from circumstances. These circumstances are the acts of the agent, and their recognition or acquiescence by the principal. The same considerations fix the category of the agency and the limits of the authority conferred. Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be found, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken

conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it." *Bronson* v. *Chappell,* 12 Wall. 681, 20 L. ed. 436.

In any view of the case, defendant's liability is absolute. The decree will therefore be reversed, with costs, and the court below is directed to enter a decree as prayed for in the bill.

*Reversed.*