# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

---

### McLEAN v. NOLAN.

---

PRINCIPAL AND AGENT; RECORDATION OF INSTRUMENTS; NOTICE; ESTOPPEL; MECHANICS' LIENS; LANDLORD AND TENANT; CONTRACTORS.

1. Even if a recorded lease which provides that the lessor shall expend a specified sum for improvements of the leased premises is constructive notice to parties furnishing labor and materials in making the improvements, of the limitation of the sum so to be expended, the fact that after the making and recording of the lease the owners through their agent agree to expend a greater sum, of which increase no record is made, and also have notice through their agent that the contractors and materialmen are furnishing extra work and material, will nullify the effect of any such constructive notice as a limitation of the agents' authority.
2. Where the landlord agreed to make specified improvements of the premises leased, and his agent and the tenant selected a superintendent of the work of improvement who received estimates for the work from separate contractors and materialmen, which were approved and accepted by the agent of the landlord, and thereafter vouchers for the work and materials were submitted by the superintendent to

such agent and paid by him, the superintendent is to be deemed the agent of the landlord, and parties doing the work and furnishing the materials are not subcontractors, but are contractors within the meaning of secs. 1237 and 1239, D. C. Code (31 Stat. at L. 1384, chap. 854) relating to mechanics' liens.

No. 2779. Submitted May 3, 1915. Decided May 28, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in a suit in equity to enforce mechanics' liens. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in equity enforcing certain mechanics' liens in favor of appellees, John J. Nolan and Walter D. Nolan, Copartners, Trading as James Nolan & Sons; James B. Lambie Company, Inc., a Corporation; The W. E. Thompson Company, a Corporation; John R. Galloway, Edward E. Murray, and Charles C. Murray, Copartners, Trading as Murray Brothers; Archibald H. Douglas, The Julius Lansburgh Furniture & Carpet Company, a Corporation; and William A. Pierce and Charles F. Schneider, Trading as C. A. Schneider's Sons; Luther Derrick, against appellants, defendants below, for labor and material furnished in repairing and improving defendants' property,—the Bellevue Hotel.

It appears that defendants leased the property to one Taylor, agreeing to expend in improvements and repairs the sum of $33,000. One Leetch was the agent of defendants, and acted for them throughout the transactions. By agreement between Leetch and Taylor, one Henderson was selected to supervise and take charge of the work.

The evidence amply supports the following statement of fact contained in the opinion of the trial justice: "About July 1st, 1912, Thomas C. Henderson was selected by Taylor, the lessee, and approved by Leetch, to supervise and take charge of the work of remodeling the hotel building. Thereafter plaintiff submitted to Henderson written estimates for doing separate

parts of the work as described in plans and specifications, and received from Leetch written acceptances and directions to go ahead and do the work contemplated. The testimony also establishes that Leetch accepted in writing estimates for original work amounting to between $15,000 and $16,000, and that thereafter, as the work progressed, plaintiffs received certificates or vouchers from Henderson stating that they were entitled to specified amounts on their contracts, which certificates were presented to Leetch and paid by him. It further appears from the testimony that, as the improvements of the building progressed, a large amount of extra work became necessary, and was done by plaintiffs on the orders of Henderson; and that for this extra work they were given vouchers drawn by Henderson which were paid by Leetch, exactly as in case of vouchers given by him against the original estimates or contracts which had been accepted or approved by Leetch. * * * Several of the plaintiffs testified that on different occasions when they visited Leetch to receive payments on vouchers for work done, they mentioned that they were doing extra work and were assured by Leetch that they would get their money; that they were to go ahead and do anything that Henderson ordered. Henderson also testified that he informed Leetch that the work was running over $33,000, and that Leetch told him to go ahead and place the orders; that the house had to be completed, and that the arrangements would be made for the additional money. It is true Mr. Leetch denies that these conversations took place, but the proof is the other way." Thus it appears that Leetch was the agent of defendants; that Henderson was employed to superintend the work jointly by Leetch and Taylor; that Leetch approved and paid the vouchers certified to him by Henderson for extra work not embraced in the original contracts, and that plaintiffs were not advised of any limitation upon the amount to be expended under the terms of the lease.

*Mr. W. J. Lambert* and *Mr. R. H. Yeatman* for the appellants.

*Mr. J. S. Easby-Smith, Mr. R. B. Fleharty, Mr. Bates Warren,* and *Mr. W. H. Sholes* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is urged that the lease, being recorded, was constructive notice of the limitation. A lease is not required to be recorded by the registration laws of the District of Columbia. Without stopping to consider whether the recording of a lease in this District imparts constructive notice, the recording of the present lease is of little importance in view of the record before us. The lease called for an expenditure of $25,000. This amount was increased by a subsequent agreement between the lessors and lessee to $33,000, of which change no record was made. It does not appear that the contractors had notice of any limitation whatever, but they had notice that they were doing extra work which Leetch was approving. If plaintiffs, therefore, had notice of the recorded limitation of $25,000, the unrecorded increase of the amount and the action of Leetch in approving and paying for work in excess of that amount waived any advantage that might have arisen from notice of the original limitation. Plaintiffs were assured by Leetch that the contracts with Henderson would be honored and paid. The court below, referring to this state of facts, said: "If, after ascertaining that Leetch had exhausted the $25,000, they ascertained he was paying for extra work and material, the effect of any constructive notice imposed by the recorded deed, as a limitation upon Leetch's authority, would be entirely nullified."

The contention that plaintiffs were subcontractors is conclusively answered in the opinion of the trial justice, as follows: "It is contended on behalf of the owners of the property that plaintiffs are subcontractors and come within the terms of sec. 1239 of the Code, and thus are limited to the amount to become due to the original contractor,—in this case $33,000. But if they were subcontractors, who was the original contractor? Certainly not Taylor, who had not assumed to make the im-

provements. Not Henderson, who was merely a superintendent, with no authority to make contracts, and all of whose dealings, according to the testimony, were expressly or impliedly approved by Leetch. The evidence clearly establishes that plaintiffs were original contractors with the owners of the property, through their agent Leetch, thus bringing them within the terms of sec. 1237 of the Code [31 Stat. at L. 1384, chap. 854]."

The attempt to invoke the rule that improvements by a lessee cannot be charged against the interest of the lessor is also without merit. Taylor did not contract to make the improvements, nor does the evidence disclose that he assumed responsibility for them. The agreement was "that the lessors shall expend, or shall cause to be expended, a sum not to exceed $25,000 on improvements and repairs," the amount being later increased to $33,000. Henderson was placed there to supervise the work by both parties. That he was the agent of defendants is clear from the testimony. Leetch stood in the shoes of defendants, and any recognition of Henderson's authority to superintend the work by Leetch was recognition by defendants. That plaintiffs were justified in relying upon the full authority of Henderson to make contracts for labor and materials on behalf of defendants, subject to the approval of Leetch, is well established. "Agents are special, general, or universal. Where written evidence of their appointment is not required, it may be implied from circumstances. These circumstances are the acts of the agent and their recognition or acquiescence by the principal. The same considerations fix the category of the agency and the limits of the authority conferred. Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or

that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it." *Bronson* v. *Chappell* (*Townsend* v. *Chappell*) 12 Wall. 681, 20 L. ed. 436.

In any view of this case, defendants are liable. The decree is therefore affirmed with costs.     *Affirmed.*