[No. 14116.   *En Banc.*   June 19, 1918.]

GRAYS HARBOR COMMERCIAL COMPANY, *Appellant*, v. TAKU CANNING & COLD STORAGE COMPANY, *Respondent.*[1]

BROKERS—AUTHORITY—PAYMENT— EVIDENCE — SUFFICIENCY.   Payment to brokers for box shooks ordered through them, is authorized where previous orders had been paid for in that way, and upon demand for payment, the buyers wrote that it had been mutually agreed that they might not be able to pay promptly and that they anticipated paying in the manner previously pursued, and the seller replied that that would be satisfactory.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 3, 1917, upon findings in favor of the defendant, in an action on contract, tried to the court.   Affirmed.

*Alexander & Bundy,* for appellant.

*Farrell, Kane & Stratton,* for respondent.

MOUNT, J.—This action was brought to recover an alleged balance of $2,500 and interest, alleged to be due from the defendant upon the purchase of twelve carloads of box shooks furnished by the plaintiff to the defendant in the year 1915.   The defendant denied any balance due.   The case was tried to the court without a jury, and resulted in a judgment in favor of the defendant.   The plaintiff has appealed.

The material facts are not disputed.   It appears that, in the year 1914, the respondent purchased some box shooks from the appellant through the States Lumber

[1]Reported in 173 Pac. 434.

Company, which was a brokerage concern managed by a Mr. Butterfield and a Mr. Randolph. That order was given by the respondent to the States Lumber Company, and that company ordered the shooks from the appellant. The shooks were shipped directly to the respondent, but were billed to the States Lumber Company. These shooks were paid for by the respondent to the States Lumber Company. Afterwards, in the year 1915, the respondent again ordered box shooks from the States Lumber Company. The order was placed by that company with the appellant, and the shooks were billed and shipped directly to the respondent. Thereafter, in May, 1915, the appellant wrote a letter to the respondent as follows:

"Taku Canning & Storage Co.,          May 19, 1915.
     "Seattle, Washington.
"Gentlemen: We beg to again call your attention to your account amounting to $5,875 covering twelve carloads of box shooks, shipped between Feb. 26th and March 10th.
"You will note that all of these shipments are more than 60 days old, and we would thank you for the freight bills, and at least a remittance on account.
                              "Yours truly,
          "Grays Harbor Commercial Company."

Upon receipt of this letter, respondent answered the same as follows:

                    "Taku Harbor, Alaska, June 1, 1915.
"Grays Harbor Commercial Co.,
     "Cosmopolis, Wash.
"Gentlemen: We are in receipt of your letter of the 19th ultimo, and would advise that we will mail you the freight bills covering shooks we received, in a few days, expecting duplicates from the railroad company at Seattle in every mail.
"As to the payment of this account, when we placed the order with the States Lumber Co., it was mutually understood that we might not be able to pay the account promptly and it was satisfactory to Mr. Ran-

dolph and Mr. Butterfield at that time. We had anticipated taking care of same in the manner that we pursued last season, which was apparently agreeable to all concerned. At this writing we anticipate making you a substantial payment to apply on account, some time during the present month.

"Trusting that this arrangement will be agreeable to you, we remain,          Yours truly,

"Taku Canning & Cold Storage Co."

In answer to this letter, the appellant wrote the respondent as follows:

"June 7, 1915.

"Taku Canning & Cold Storage Co.,
    "Maynard Building, Seattle.

"Gentlemen: We beg to acknowledge receipt of your favor of June 1st and would advise that the handling of the account as outlined will be satisfactory to us.

"Yours very truly,

"Grays Harbor Commercial Company."

Thereafter, on July 7, 1915, the respondent paid $2,500 to the States Lumber Company to apply upon the purchase of these shooks. The States Lumber Company did not notify the appellant of this payment, and afterwards, on August 21, appellant wired respondent, asking when it could expect a remittance as promised in respondent's letter of June 1, above quoted. Thereupon respondent notified appellant of the $2,500 payment and, on August 28, mailed to appellant its check for $2,920, the balance of the account. Thereafter this action was brought to recover $2,500 and interest from the respondent, with the result as above stated.

It is contended by the appellant that the States Lumber Company had no authority to collect this money, and that the respondent was not authorized to make the payment of $2,500 to the States Lumber Company. This is the principal point upon the appeal. It is not contended, as we understand the record, that the re-

spondent was notified prior to August 21 that payment
should not be made to the States Lumber Company.
On June 1, when demand was made upon the respond-
ent for a remittance upon the account, the respondent
stated to the appellant that, when the order was placed
with the States Lumber Company,

"It was mutually understood that we might not be
able to pay the account promptly and it was satisfac-
tory to Mr. Randolph and Mr. Butterfield at that time.
We had anticipated taking care of same in the man-
ner that we pursued last season, which was apparently
agreeable to all concerned. At this writing we antici-
pate making you a substantial payment to apply on
account, some time during the present month."

In answer to this letter the appellant stated "that
the handling of the account as outlined will be satis-
factory to us."

In the absence of any notice to the respondent from
the appellant that payment should not be made to the
States Lumber Company, we think, under the state-
ment in the letter of June 7, above quoted, that the re-
spondent was authorized to make the payment to the
States Lumber Company, through which the order was
given. Respondent had, the year previous, paid its
account to the States Lumber Company. This order
was placed by the States Lumber Company, which was
a brokerage concern receiving orders of this char-
acter. It had received and placed the order the year
before, and payment had been made through it. The
shipment of the year before was billed to the States
Lumber Company, but the goods were forwarded di-
rectly by the appellant to the respondent and duplicate
shipping bills were issued. The order of 1915 was
placed by the States Lumber Company, and the goods
were billed and shipped direct from the appellant to
the respondent, but the respondent received duplicate

shipping bills, one from the appellant, and the other from the States Lumber Company. So far as the respondent was concerned, there is nothing to show that it knew of any changed condition from the year previous. It had a right, therefore, to rely upon the letter of June 7, where it was advised that the handling of the account as outlined would be satisfactory. The account was handled in that way, and respondent made the $2,500 payment as it had done before. If the appellant did not desire the payments to be made through the States Lumber Company, as previously done, it should have notified the respondent in its letter of June 7 that payments should be made directly to the appellant and not through the States Lumber Company.

In the case of *Bronson's Executor v. Chappell*, 79 U. S. 681, it was said:

"Agents are special, general, or universal. Where written evidence of their appointment is not required, it may be implied from circumstances. These circumstances are the acts of the agent and their recognition, or acquiescence, by the principal. The same considerations fix the category of the agency and the limits of the authority conferred. Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it. If business has been transacted in certain cases it is implied that the like business may be transacted in others. The infer-

ence to be drawn is, that everything fairly within the scope of the powers exercised in the past may be done in the future, until notice of revocation or disclaimer is brought home to those whose interests are concerned. Under such circumstances the presence or absence of authority in point of fact, is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same.''

In answer to the letter of June 1, written by the respondent to the appellant, the respondent stated:

''We had anticipated taking care of the same in the manner that we pursued last season, which was apparently agreeable to all concerned.''

The appellant then stated that ''the handling of the account as outlined will be satisfactory to us,'' without notifying the respondent that payment should be made directly to the appellant and not to the States Lumber Company. The respondent would understand from this letter that the method pursued the previous season would be satisfactory. That season the respondent paid the bill to the States Lumber Company, which took and filled the order, and under these letters respondent was justified in assuming that payment might be made the same as it was at that time. It was made in that way, and we think the appellant ought not now be heard to say that the agent had no authority to receive the money. For this reason, we are satisfied the trial court properly found in favor of the respondent.

The judgment is affirmed.

MAIN, C. J., MITCHELL, HOLCOMB, PARKER, MACKINTOSH, FULLERTON, and TOLMAN, JJ., concur.