**Samuel Frank MOLLENBRINK et al., Respondents,**

**v.**

**Scott GIBSON et al., Appellants.**

**No. 25586.**

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

S. L. Sayles, Kansas City, and Michael Mulford, Richmond, for appellants.

Roger Guy Burnett, Liberty, and A. V. McCalley, Richmond, for respondents.

PER CURIAM.

Appellants filed a motion to set aside a judgment entered upon a stipulation made by counsel for both parties. The motion alleges that the judgment is irregular because: "1. The defendants did not agree to the terms set out in the stipulation as filed. 2. That the defendants were to file the stipulation and have not and did not file the stipulation, and a copy of the stipulation was filed without the knowledge of defendants."

In the single point presented, appellants say: "The Court erred in rendering judgment on the basis of a stipulation which was not signed by either party and which purported to compromise and settle the suit because the general rule of law is that an attorney may not settle or compromise a claim without the express or implied consent of his client."

The record shows these facts: Respondents joined in filing their twelve count petition variously alleging their claims to relief, and in general setting forth claims of fraudulent representations as to furnishing free water to a mobile trailer subdivision until water would be furnished by a rural water district; breaches of warranty

in the sales of mobile trailers; breach of contract in the installation of concrete runners and pads for trailers in a workmanlike manner; and breaches of contract for putting in water lines, septic tanks and concrete pads, including the furnishing of marketable title as to trailer lots sold.

On January 20, 1970, the Mollenbrinks voluntarily dismissed their Count II of the petition without prejudice. On February 2, 1970, the parties appeared in person and by counsel and announced ready for trial. The record recites, "After a recess, the parties announce they have reached a compromise of the issues herein and will file a Stipulation. The jurors are discharged." On the same day the stipulation was filed and it recites, "Come now the parties hereto by their attorneys of record, and state to the Court that the above captioned case has been compromised and settled, and it is hereby stipulated and agreed between the plaintiff and defendant as follows". Appellant, Excelsior Estates, Inc., agreed to convey certain lots in the subdivision to the Mollenbrinks and the Wilsons "free and clear of all encumbrances of any kind or nature, except easements, covenants and restrictions of record, within 30 days of the date of filing of this stipulation." Excelsior further agreed, within 12 months, to construct a sewer main connected to a lagoon, on the easement running between certain lots in the subdivision and to permit the Mollenbrinks to connect to it; that the Mollenbrinks should pay for all water used by them at the same rate charged for all other water used in Excelsior Estates; that the Wilsons should have the right to connect to water and sewer mains when available from their lots; and that appellants have the costs of the action assessed against them. The Mollenbrinks dismissed their Counts 1, 2 and 3, and the Wilsons dismissed their Counts 10, 11 and 12, all with prejudice. There was a further recitation: "It is further stipulated and agreed that judgment be entered by the Court in accordance with this Stipulation." The stipulation was signed by Mr. Roger Guy Burnett, attorney for plaintiffs,

and Mr. S. L. Sayles, attorney for defendants. All other parties plaintiff who had joined in the petition had previously dismissed their claims. The court entered judgment in accordance with the stipulation filed.

Mr. Sayles testified that he was the attorney for all the defendants in the case. On the day of the appearance of the parties for trial, the court held a recess to see if there would be any productive results from negotiations for settlement. In possibly an hour of negotiations, there was discussion of appellants transferring two lots to one plaintiff and three lots to another, and there was also a discussion as to when a certain sewer line would be completed. The development was a private one with no sewer lines, streets or water lines. There was no discussion in Mr. Sayles' presence regarding the hooking on or attaching to the sewer line and water line, but there was a discussion as to when a sewer line would be dug—within a year's time. The court was advised that a settlement was reached, and they adjourned to Mr. McCalley's office to draw up a stipulation. The Mollenbrinks and the Wilsons went to Mr. McCalley's office but Mr. Sayles did not have his clients go there. His clients awaited the drafting in a drug store. Changes were made in the stipulation three times, Mr. Sayles signed two copies, "and I took the original to file it after I had received consent from my clients, all of this last, with consent of my clients—now it was not a long discussion, and I don't think I had even said that to Mr. McCalley but the changes had been made, * * * and unless my clients agreed to the exact Stipulation I had, I would not have filed it, * * *." "The terms of that agreement are not as agreed to by my clients. I negotiated them and I had anticipated that they would agree or sign it, and I thought or hoped that they would agree to it. They do not agreed [sic] to it, and I had not filed the original of this Stipulation, and no costs were paid by the defendant to the Court." Apparently Mr. Sayles got through arguing and dis-

cussing the matter with his clients about 4:30 or 5:00 p. m., and continued discussion on the way from Richmond. Later that day or the next day, he called the clerk that he could not file the stipulation "and could not agree, and we would have to come and see about it, and she advised me that the copy of the *Motion* (obviously meaning 'stipulation') had been filed, I believe she said it was filed by Mr. Burnett." A photocopy of the stipulation as filed, having been forwarded by the Circuit Clerk to this court, does not bear signatures, but has the names of the attorneys typewritten upon it. When Mr. Sayles found out that the copy had been filed, he filed a motion to set the stipulation aside, because "* * I intended to have the consent of my clients before I filed the Stipulation, and I didn't get it, so I didn't file it, but the copy was filed, and it is of record, least wise, the copy is on record."

On cross-examination, Mr. Sayles acknowledged that he had an agreement with Mr. McCalley and Roger [Burnett] in the hall and in the Clerk's office. He acknowledged that there was an agreement between the two client parties, that two lots would be conveyed to the Mollenbrinks, and three lots to the Wilsons; he recalled the conversation with Mr. Scott Gibson in the hall concerning the sewer main. Mr. Gibson said there would be a sewer dug within a year. Although he had agreed that a sewer would be built, he did not agree that it could be hooked onto—there was nothing said about hooking on to it or to the water. Appellants objected that Mr. Sayles stipulated that the Mollenbrinks and the Wilsons would be permitted to hook on to it, being these words in paragraph 3 of the stipulation: "shall be permitted to connect to said sewer main, and the existing water main, and Lot No. 1 owned by said plaintiffs shall be permitted to connect to said sewer main and water main."

Ray Jourdan was president of Jourdan Mobile Homes, Inc., and an executive officer of RCR Development Corporation. He, or these companies, have an exclusive working interest in the sale of lots within Excelsior Estates, Inc. He agreed to transfer Lots 3 and 16 to the Mollenbrinks, and Lots 8, 9 and 10 to the Wilsons, but there was no discussion as to sewers being made available, or that the lots could be hooked to it. He did not agree to the whole stipulation. In previous letters to prospective customers he said that the sale price of the lots included water, sewage facilities, streets, phone service "and natural gas will be offered," and such is a true statement of his intentions and what he had been doing. He was present when Mr. McCalley had a discussion with Mr. Gibson who said he would possibly put in sewers in 12 months when the frost went out of the ground.

Roger Guy Burnett was attorney for the Mollenbrinks and the Wilsons, and entered into negotiations with Mr. Sayles for the settlement of the case on the morning of February 2, 1968. The stipulation was drawn in the law offices of McCalley and Calvin. "Q. Now, to your knowledge, was there ever anything said among the three attorneys, Mr. Sayles, yourself and myself, as to Mr. Sayles consulting with his clients prior to the filing of the stipulation which we had agreed upon and signed? A. None at all." Mr. Burnett's understanding was that he "was to file that stipulation, because upon Mr. Sayles leaving, he told me that he was going to the City, and he was through, and so then we looked for that original copy of the stipulation, both in your office and in the library, where papers were lying, and couldn't find it, and we wondered what had happened to it." Since several copies had been signed, Mr. Burnett got one from one of their clients and filed it with the clerk. At the time they left for McCalley's office to draw the stipulation, Mr. McCalley said to Mr. Gibson and Mr. Jourdan that they could come over to his office, but Mr. Gibson said, "No, we will go to the drug store and let Sam do it for us." The stipulation clearly sets out the agreement arrived at both in the courthouse corridors and in the office.

**148**

Appellants' contention that Mr. Sayles had no authority to enter into the stipulation for them is clearly controverted under the evidence above detailed. They left the matter to Mr. Sayles to work out. According to Mr. Burnett, the written stipulation was in accordance with the prior agreements for settlements. Conflicts in the testimony were for the trial court to resolve, its judgment in respect to which will be deferred to by this court. Tyler v. Board of Education of City of St. Louis, Mo.App., 306 S.W.2d 601; Bourne v. Manley, Mo. App., 435 S.W.2d 420. There was a legitimate inference which the trial court was entitled to draw for its finding that respondents would not have entered into the stipulation to dismiss their actions unless they were entitled to hook on to and use the sewer agreed by appellants to be built. There was sufficient evidence for the trial court to conclude that Mr. Sayles had full authority to enter into the stipulation on behalf of appellants, Wenneker v. Frager, Mo.App., 448 S.W.2d 932, 937 [8], " 'An attorney in charge of a case has implied authority from his client to enter into any stipulation for the control of the progress of the action, even to the entering of judgment in favor of the opposite party.' (Citing cases.)" Quoting Kahn v. Brunswick-Balke-Collender Co., Mo.App., 156 S.W. 2d 40 [8], the Wenneker opinion went on: " '* * * And the compromise of a pending suit by an attorney having apparent authority, will be binding upon his client, unless it be so unfair as to put the other party upon inquiry as to the authority, or imply fraud. Black v. Rogers, 75 Mo. 441.' " No fraud upon appellants is even slightly in the case. On the contrary, it is impliedly a fact that if they performed their conceded agreement to install sewers within one year, appellants would be entitled to use what was placed there for the convenience and health of occupants of the subdivisions.

The trial court's refusal to set aside the judgment and stipulation is not clearly erroneous, Rule 73.01(d), V.A.M.R., and consequently the judgment is affirmed.