## Bronson's Executor *v.* Chappell.

Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or, by his conduct, adopts and sanctions such acts after they are done, he will be bound, though no previous authority exist, in all respects as though the requisite power had been given in the most formal way. This doctrine applied to a case depending on special facts.

Appeal from the Circuit Court for the District of Wisconsin.

Bronson, of New York, being owner as executor of lands in Wisconsin, sold a tract to E. and J. Chappell, residing near Galena, in that State, the sale being negotiated by one W. C. Bostwick, of the last-named place. A portion of the purchase-money was secured by mortgage; and as it became due it was paid by the Chappells to Bostwick, under the assumption by them that Bostwick, who had advertised himself during a term of twelve or fourteen years as the agent of Bronson, was the duly constituted agent of Bronson to receive it. Bostwick having failed, and appropriated the money to his own use, Bronson now filed a bill against the Chappells in the court below to foreclose the mortgage. The defendants set up the payments to Bostwick; and the question involved was thus a pure question of agency. The defendants relied upon a correspondence between Bronson and Bostwick, and particularly, as sufficient of itself, on a letter from the latter to the former, dated 9th February, 1860, and a reply to it of the 15th. These two letters are quoted and the general character of the others, with the leading facts of the case, stated in different parts of the opinion. The court below dismissed the bill, and Bronson took the appeal.

*Mr. J. J. Townsend, for the appellant; Messrs. Cothren and Laken, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

But a single question has been argued in this court, and that is one arising upon the facts as developed in the record. This opinion will be confined to that subject.

William C. Bostwick, acting for Frederick Bronson, negotiated the sale of a tract of land in Wisconsin to the defendants. According to his custom in such cases, Bronson forwarded to Bostwick the draft of a contract to be executed by the buyers. At the foot of the draft was a note in these words :·

"William C. Bostwick, Esq., of Galena, is authorized to receive and receipt for the first payment on this contract. All subsequent payments to be made to F. Bronson, in the city of New York."

The defendants expressed to Bostwick a preference to receive a deed and give a mortgage. This was communicated to Bronson, who acceded to the proposition and forwarded to Bostwick a deed and the draft of a bond and mortgage. On the 25th of March, 1865, the defendants paid to Bostwick $1500 of the purchase-money, and executed the bond and mortgage to secure the payment of the balance. According to the condition of the bond it was to be paid to the obligee in the city of New York, in instalments, as follows: $781.20 on the 13th of Nov⸍ ɴber, 1865, and the remaining sum of $4562.40 in seven equal annual payments, from the 12th of February, 1865, with interest thereon at the rate of 7 per cent. per annum. The contract was erroneously construed by Bronson as requiring the interest on all the instalments to be paid with each one as it fell due. The other parties seem to have acquiesced in this construction. On the 4th of December, 1865, the defendants paid to Bostwick, as the agent of Bronson, $825.36, in discharge of the amount claimed to be due on the 30th of November, 1865, and took his receipt accordingly. On the 28th of February, 1866,

they paid Bostwick $980 to meet the second instalment and interest, as claimed, with exchange, and took his receipt as before. Bostwick failed in December, 1866. These moneys were never paid over to Bronson. He denied the authority of Bostwick to receive them, and demanded payment from the defendants. They refused, and Bronson thereupon filed this bill to foreclose the mortgage. The validity of these payments is the question presented for our determination.

Agents are special, general, or universal. Where written evidence of their appointment is not required, it may be implied from circumstances. These circumstances are the acts of the agent and their recognition, or acquiescence, by the principal. The same considerations fix the category of the agency and the limits of the authority conferred. Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defence. If a loss is to be borne, the author of the error must bear it. If business has been transacted in certain cases it is implied that the like business may be transacted in others. The inference to be drawn is, that everything fairly within the scope of the powers exercised in the past may be done in the future, until notice of revocation or disclaimer is brought home to those whose interests are concerned. Under such circumstances the presence or absence of authority in point of fact, is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same.

Bronson, as executor, had a large body of lands in Wisconsin for sale. For several years prior to the purchase by the defendants, Bronson had been in the habit of receiving and forwarding propositions to Bostwick. If approved, Bronson executed and forwarded contracts for the property, to be executed by the other parties. In the early part of the year 1860 Bostwick was startled by a memorandum touching payments, on a draft sent out by Bronson, like that in the draft sent to Bostwick for execution by the defendants. On the 9th of February he addressed a letter to Bronson, in which he said:

"My attention was naturally arrested by the note at bottom of the contract of Tormey, and if it is to be interpreted as an intimation that a withdrawal of my agency is contemplated, it would cause me not less surprise than pain, not so much by any means from the pecuniary consideration connected with it, as from the implied dissatisfaction on your part with the manner in which I have transacted your business; and it occasions the more surprise that I have always endeavored to attend with fidelity and promptness to your business and interests, and have never before had any intimation whatsoever from you that you were not entirely satisfied. I am wholly at a loss to conceive wherein I have given dissatisfaction, or failed to do all that was necessary to do, or could be done under the particular circumstances of any case involving your business or interests in my hands."

On the 15th of the same month Bronson replied as follows:

"The memorandum at the foot of Tormey's contract I have recently put on all of my land contracts to repel the construction lately sought to be put on them, that the first *or other payments, if received by the agent,* is an implied waiver of the claim for exchange, and of the stipulation in the body of the contract, that the money is to be paid to me in the city of New York. In other words, it is but a repetition of a clause in the contract, as applicable to all except the first payment."

This correspondence suggests several remarks:

Bostwick speaks of his employment as having been, and then being, an "*agency*" for Bronson. He inquires whether

it was contemplated by Bronson to revoke it.   Bronson does not deny or revoke it.   He says the object of the memorandum was to repel the construction that the receipt of "the first *or other payments by the agent*" was "an implied waiver of the claim for exchange," and which was the same thing in effect—a waiver of the stipulation in the contract that the money was to be paid to him "in the city of New York."   It recognizes the authority of the agent to receive the subsequent payments as well as the first one, provided exchange were paid upon the former by the debtor.

The language employed by Bronson will admit of no other construction.   It applies with full force to the bond of these defendants.   They paid exchange as well as the principal and interest of the instalments in question.   There is no evidence in the record that the authority thus admitted to exist was ever withdrawn.   It must be presumed to have continued until the relations of the parties were terminated by Bostwick's failure and insolvency.   Bostwick says in his deposition: "I advertised myself as the agent of the Bronson lands, which advertising was continued for a period of twelve or fourteen years."   His testimony upon this subject is uncontradicted.

There are found in the record thirty-four letters from Bronson to Bostwick, all relating to business connected with the Bronson lands.   The first letter bears date on the 12th of December, 1855, the last one on the 27th of November, 1865.   They are in all respects such as would naturally be addressed by a principal to an agent in whose judgment, integrity, and diligence he had the fullest confidence.   They refer to sales, to the delivery of deeds and contracts, the payment and collection of taxes, and a variety of other matters in the same connection.   Ten of the letters authorize the delivery of contracts on the receipt of the first payment by Bostwick.   Fourteen of them authorize the collection, or acknowledge the transmission, of other moneys.   Bronson was absent in Europe from the 9th of October, 1861, until about the middle of December, 1864.   During that time his business was attended to by his attorney, E. S. Smith, Esq.,

of the city of New York. There are in the record twenty-one letters from him to Bostwick. They are of the same character with those from Bronson. Twelve of them acknowledge the collection and transmission of moneys for Bostwick. It is not stated whether they were the first or later payments. But the circumstances show clearly that they were in most, if not in all instances, of the latter character. All collections were made, and all business relating to the lands was transacted through Bostwick. In one of these letters, Smith says:

"P. S.—Mr. Bronson, in a letter received, writes: 'I am willing to sell lands through Mr. Bostwick upon an advance of price equal to the depreciation of paper money at the time of sale,'" &c

A further analysis of the letters of these parties would develop a large array of additional facts bearing in the same direction and hardly less cogent than those to which we have adverted. There is no intimation in any of them that Bostwick was regarded as the agent of the buyers, that he was not regarded as the agent of Bronson, or that he had in any instance exceeded his authority. It is unnecessary to pursue the subject further. Viewed in the light of the law, we think the evidence abundantly establishes two propositions:

1. That Bostwick was the agent of Bronson, and as such authorized to receive the payments in question.

2. If this were not so—that the conduct of Bronson—numerous transactions between him and Bostwick and the course of business by the latter—authorized or known to and acquiesced in by the former—justified the belief by the defendants that Bostwick had such authority and that Bronson was bound accordingly.

DECREE AFFIRMED.