Black v. Rogers.

BLACK, *Appellant*, v. ROGERS.

1. **Attorney and Client**: COMPROMISE OF SUIT. The compromise of a pending suit by an attorney having apparent authority, will be binding upon his client, unless it be so unfair as to put the other party upon inquiry as to the authority, or imply fraud.

2. **Judgment.** An order of court was in these words: "Now at this day this cause is compromised and settled as per stipulation now filed, each party to pay his costs," *Held*, that, though neither formal nor full, this was a judgment of like binding force on the parties as any other judgment.

3. ———: COMPROMISE. One of the parties to a judgment rendered upon a compromise denied its validity on the ground that the compromise had been made by his attorney in violation of instructions. It appeared, however, that he became aware of all the facts the same day that the judgment was entered, but permitted the term to elapse without taking any step to set it aside. *Held*, that it was conclusive upon him.

4. **Agreement to Arbitrate, when Enforceable.** In a suit in which

the chief matter in dispute was a boundary line, judgment was rendered in accordance with an agreement settling this line, which provided, as auxiliary thereto, for the purchase of a small strip of land and a hedge by the one party from the other, at a valuation to be made by arbitrators to be selected by the parties. One of the parties having refused to select an arbitrator, *Held*, that the court had power to cause the valuation to be made by its own officer.

*Appeal from Saline Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

This was an action of ejectment between adjoining proprietors brought to determine the right to a strip of land on their common boundary line. A prior action between the same parties for the same land had been terminated by a compromise and the entry of the following order: "Now, at this day, come the parties by their respective attorneys, and the jury herein re-assembles and the trial of the cause is proceeded with. And now at this day this cause is compromised and settled as per stipulation in writing now filed, each party to pay his costs."

The stipulation referred to was as follows: "This suit is compromised on the following terms: The line between the parties shall be established as follows: Run south from a point thirteen feet west of plaintiff's hedge on north, to the fence of defendants extending from the hedge to township line, thence with said fence to township line. The defendants to pay the value of hedge fence from the half mile point from the north corner to south end of hedge, and to pay plaintiff for the thirteen feet lying west of the hedge, and thirteen east of the fence, so as to make line straight. The whole then to be partition division fences between plaintiff and defendants. The value of the land on west of hedge and east of fence, and the hedge south of the half mile point, to be ascertained by two disinterested persons, one chosen by each, and the two thus chosen to select a third, who shall make a valuation; then

each party to pay their own costs, the suit being dismissed. The plaintiff and his tenants to have right of way south or north through any gates used by defendants on their land." This stipulation was signed by Letcher and Vest, attorneys for Black, the plaintiff, and by Shackelford and Boyd, attorneys for Samuel and James Rogers, the defendants.

The answer in the present case set up this compromise as a defense and prayed for specific performance of its terms. The reply put in issue the authority of Messrs. Letcher and Vest to make the compromise. This issue was submitted to a jury, who found for the defendants. The court adopted the finding, and after a further hearing found upon the whole case for the defendants, and entered judgment establishing their right to the land in dispute, and the right of plaintiff to a private way according to the stipulation, and also directing that each party be allowed to select a disinterested person whose duty it should be, in conjunction with a third person to be selected by them, to make the valuation provided for in the stipulation, and appointing John H. McDaniel, Esq., commissioner, and directing him, in case the parties or either of them should refuse to make such selection, to take an account of the value of the land and the south portion of the hedge by hearing evidence, and to report the same to the court, and further directing that upon the payment of the amount thus ascertained to the plaintiff by defendants, or in case of refusal of plaintiff to accept the same, deposit of same in court for plaintiff's use, then the plaintiff should convey to the defendants the strip of land specified, and further declaring that plaintiff be forever enjoined from prosecuting his ejectment suit, and that said decree operate as a final settlement of the division line between the lands of plaintiff and defendants.

On behalf of plaintiff the testimony was that he had authorized his attorney to compromise upon the basis of a survey made in 1852 of the dividing line; the payment to

him of the rents from 1870 of the thirteen foot strip which respondents conceded to be his, and of the rent on the excess of hedge; that he also stipulated for the right of way west of the hedge for himself and tenants; that on these terms he agreed to settle, and sell to respondents all the land west of the hedge and the hedge south from the half mile point; that the survey of 1852 would have given appellant about seven acres west of the hedge; that he did not hear what passed between counsel while effecting the compromise, nor was he near enough to do so, and did not hear the agreement read; that he did not hear the announcement in court that the case was settled; that when he did hear, for the first time, on the street, that the case was settled, he supposed it was upon the terms authorized by him; that he obtained a copy of the settlement, took it home with him and read it that night, was astonished that neither the survey of 1852 nor the rents of the land and hedge were mentioned; that the next morning he rode into Marshall and urged his attorney, Mr. Letcher, to have the judgment set aside. Mr. Letcher testified that he said to appellant in reply that as the matter had been arranged between Mr. Vest and Mr. Shackelford, and the latter was gone, he did not see how anything could be done before the next term of court, at which time the case would come up, the stipulations according to his view providing that the terms were to be carried out and that the suit was to be dismissed.

The testimony on behalf of defendants was, in substance, that the first action came on for trial on the 13th day of October, 1877, and progressed until the adjournment of the court on the next day for dinner; that before the court met again, Mr. Vest, in the court room, made to the counsel for defendants an overture of compromise, who proposed some modification, to which Vest replied that he would see his client about it, and he did go into the back part of the room and hold a conversation with him. He returned and said his client wished the privilege of passing

over a road that defendants might keep open west of the·
hedge, and would agree to the compromise.   The agree-
ment was then written and read.   Some of the witnesses
testified that plaintiff was present at this time within a few
feet, near enough to hear; and that he afterward said, on
the same day, that he was glad the matter was settled, that
he was all the time willing to compromise, but that re-
spondents would do nothing.   When the court met after
dinner, Mr. Vest announced publicly that the case had
been settled as per written stipulations, which he then
filed.

Davis & Cooney for appellant.

An attorney has no authority arising from his employ-
ment in that capacity to compromise the claims of his
client; such authority, whenever it exists at all, does so by
reason of the client specially conferring on his attorney
the power to effect the compromise in the given case.
Story on Agency, § 99 ; Hall v. Hopkins, 14 Mo. 450 ; Tay-
lor v. Labaume, 14 Mo. 572 ; Quarles v. Porter, 12 Mo. 76 ;
Davidson v. Rozier, 23 Mo. 387 ; Walden v. Bolton, 55 Mo,
405 ; Spears v. Ledergerber, 56 Mo. 465 ; 1 Parsons on Cont.,
113.   An attorney authorized to compromise a suit is a
special agent to perform a single act, and must be governed
by instructions ; and if he exceeds the special and limited
authority given him, he does not bind his principal.   Story
on Agency, §§ 99, 126 ; 1 Parsons on Cont., ch. 3 ; Walden
v. Bolton, 55 Mo. 405.   The fact that appellant was present
in court does not show that he had any knowledge of what
was passing between the attorneys with reference to the
compromise.   In the former trial of this cause, there was
no decree or judgment of the court rendered upon the
stipulations filed.   The whole proceeding of the compro-
mise was a surprise to plaintiff, and his presence in court
cannot be made a trap to catch him in, and fasten upon
him, by any means of construction, a knowledge of facts

which from the evidence it is clear he never had.    *Evans
v. Llewellin*, 1 Cox 340; *s. c.*, 2 Bro. Ch. 150.

*Charles A. Winslow* for respondents.

The judgment rendered in the former suit was a final
judgment, and appears so entered on the record.    Appel-
lant's reply is a general denial of the answer, and contains
nothing in avoidance of the judgment.    To avoid it on
equitable grounds, for any recognized cause, he should
have set up the equitable matters relied on in his reply.
The judgment settled all matters in dispute between the
parties, and is very much unlike an ordinary judgment in
ejectment.

Appellant's attorney had apparent authority to sign
the compromise agreement.    It is admitted that he was
authorized to make a compromise.    There is no evidence
or pretence that respondents or their attorney had any
knowledge or intimation of the pretended limitation upon
the authority; on the contrary they acted on the assump-
tion, fully warranted by the presence and conduct of the
appellant, that the authority was ample, and knew nothing
to the contrary until long after the judgment was entered
and court had adjourned.    Under these circumstances, the
compromise was binding, unless so flagrantly unfair as to
imply fraud or put the respondents on inquiry.    Wharton
on Agency, § 594; Weeks on Att'ys at Law, § 230.    The
compromise was a very fair and just settlement of the
controversy, establishing the boundary line in a manner
which should have been satisfactory to appellant, as other-
wise a strip of his land, thirteen feet wide and two-thirds
of a mile long, would have been cut off from his farm by
a permanent hedge.    Selling this strip at a fair valuation,
straightening the line, and securing its permanent location
in conformity to this hedge, and simply giving up the rents
of the disputed strip and part of the costs, for which the
stipulated right of way may have been a full compensa-

tion, was certainly a favorable compromise for appellant, and one which his attorney might well have made without any special authority. Wharton on Agency, § 590. The survey line of 1852 was the only other matter in dispute, and the surveyor had testified that he was not able definitely to locate the line, though the southern end of it fell west of respondents' fence. Appellant could not have recovered up to that line on his own testimony, and respondents' evidence as to an agreed line yet remained.

The preponderance of the evidence shows that appellant's attorney had express authority to make the compromise—and this issue of fact was found in favor of respondents by the jury, and this finding sustained by the trial court. Agreements for a compromise will be enforced like other agreements. *Fugate v. Robinson*, 18 B. Mon. 680; *Johnson v. Johnson*, 40 Md. 189.

This case falls clearly within one of the exceptions to the rule that courts will refuse to enforce simple contracts of sale where the price is to be fixed by arbitrators. Pomeroy on Cont., p. 213, § 151; *Providence v. St. John's Lodge*, 2 R. I. 46; *Dike v. Greene*, 4 R. I. 285; *St. Louis v. Gaslight Co.*, 70 Mo. 69; *Gourlay v. Somerset*, 19 Ves. (1 Am. Ed.) 429; *Jackson v. Jackson*, 1 Smale & G. 184; *Paris Chocolate Co. v. Crystal Palace Co.*, 3 Smale & G. 119; *Dinham v. Bradford*, 5 Chan. App. Cas. 519; *Richardson v. Smith*, 5 Chan. App. Cas. 648; *Smith v. Peters*, L. R., 20 Eq. 511; Fry Spec. Perf., (2 Am. Ed.) §§ 217, 219; Waterman Spec. Perf., § 47, p. 43, § 148, p. 193.

### I.

SHERWOOD, C. J.—The facts in the case show that the attorney for the plaintiff had either the actual or else the apparent authority to make the compromise. The plaintiff was distant but a few feet and in plain view while the compromise was being effected. During the progress of the negotiations, his attorney, not feeling altogether satisfied with a proposal on a certain point, went back to his client, held

a conference with him and returning, said, that with a named modification, his client would agree to the compromise. The desired concession was made by the defendants, and thereupon the compromise was drawn up and signed by the respective attorneys, Vest and Shackelford, judgment entered upon the agreement and the pending cause dismissed while the defendants with their attorneys were in the court room, and while, according to the testimony of Mr. Letcher, the plaintiff was also there present. There is no pretense that there was any fraud practiced on plaintiff in making the compromise, or that plaintiff's attorney had no authority to make a compromise; and the law is settled that while a compromise made by an attorney without authority or in violation of his client's commands will not be enforced to the client's injury, yet, if the authority of the attorney be apparent, then his client will be bound, unless the compromise possessed such elements of intrinsic unfairness as to provoke inquiry or imply fraud. Wharton Agency, § 594, and cases cited; Weeks on Attorneys at Law, § 230. And the compromise in this case bears no such indications, and it is evident the plaintiff either heard the compromise agreement made or else could have done so with a very little exertion on his part.

## II.

The judgment entered upon the compromise agreement, though neither formal nor full, was of like binding force on the parties thereto, when rendered, as any other judgment; and no appeal was taken therefrom, or motion or application of any sort made to set that judgment aside, though court remained in session, and plaintiff came into town next day with a copy of the agreement which he had taken home with him and read for the first time the night before, and complained to one of his attorneys that it did not correspond with what he had authorized. If this was the case then his neglect was inexcusable in failing to acquaint himself with the terms; and on being in-

formed what the terms of the agreement were, he should have taken the necessary steps promptly to have prevented the judgment, in consequence of the term going by, from hardening into final and irremediable conclusiveness. But no such steps were taken, and in consequence thereof, all the matters then controverted must be regarded as *res judicata*, and, therefore, no longer open to re-agitation.

## III.

But the claim is made that that portion of the judgment relating to the appointing of persons by the parties to value the strip of land thirteen feet in width, is not enforceable. This is the general rule as to the selection of persons to fix the valuation of the subject matter of the contract. In a word, agreements to arbitrate are incapable of specific enforcement. *Biddle v. Ramsey*, 52 Mo. 153; *Hug v. Van Burkleo*, 58 Mo. 202; *St. Louis v. Gaslight Co.*, 70 Mo. 69. But though this is the general rule it is not the universal rule. The rule has its well ascertained exception. This exception occurs when the essence of the agreement does not consist in the fixing of a value by arbitrators, but the fixing of such value is merely subsidiary or auxiliary to the principal agreement. As, for example, an estate is sold and the timber on a part to be taken at a valuation. In such case it is held that though the valuation cannot be made *modo et forma*, yet, that the court finds no difficulty, but in relation to such minor matters will substitute itself in the place and stead of the arbitrators, since the case is not one where no contract can be made out except through the intervention of arbitrators, but where a valid contract exists independent of their action.

In this case the parties to the compromise agreement can never be restored to their *statu quo*. That opportunity is forever gone, by reason of the judgment rendered. So far as concerns the matters embraced in that judgment they cannot be re-litigated. The main object of the contract and judgment of compromise was not the sale of a

29—75

strip of land thirteen feet wide, but the adjustment of a matter hotly litigated, the settlement of a disputed boundary, and the absolute cessation of all litigious strife in respect thereto. But the disputed boundary has been irrevocably fixed by the judgment rendered upon the compromise agreement. A mere incident of that agreement is the fixing of the valuation of the paltry strip of land. In such circumstances, if we are to be guided by the authorities and sound reason, we cannot well hesitate. This evidently was the view taken of the matter by the circuit court, and we affirm the judgment. All concur.