COURT OF APPEALS OF VIRGINIA

Present:  Judges Annunziata, Bumgardner and Clements
Argued at Alexandria, Virginia


FAYE E. WALSON
                                            OPINION BY
v.   Record No. 1701-00-4     JUDGE JEAN HARRISON CLEMENTS
                                       DECEMBER 18, 2001
ROBERT C. WALSON


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     M. Langhorne Keith, Judge

          Betty A. Thompson (Paul Varriale, on brief),
          for appellant.

          Eric F. Schell for appellee.


     Faye E. Walson (wife) appeals a decision of the trial court

finding her bound by an agreement signed by her attorney and

subsequently incorporated by reference into her final decree of

divorce from Robert C. Walson (husband).  She contends the trial

court erred in determining that her attorney had apparent

authority to sign the agreement on her behalf and, thus,

compromise her claim.[1]  We hold that the trial court's factual

finding that wife's attorney had apparent authority is

_____

     [1] For purposes of this appeal, we have consolidated wife's
interrelated first three questions presented.  Furthermore, we
do not address wife's fourth question presented because she did
not raise at the trial level her claim therein that the trial
court misplaced upon her the burden of showing that she apprised
husband or his attorney of any restrictions on her attorney's
authority.  See Rule 5A:18.

unsupported by the evidence in the record and, accordingly, reverse the trial court's judgment and remand this case for further proceedings.  Because we conclude that the trial court erred in finding, as a matter of fact, that, under the circumstances of this case, wife's attorney had apparent authority to execute the agreement on wife's behalf, we do not address the issue of whether an attorney may, as a matter of law, bind his or her client to a written property settlement agreement by apparent authority.

## I.  BACKGROUND

We view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to husband, the party prevailing below.  See Stockdale v. Stockdale, 33 Va. App. 179, 181, 532 S.E.2d 332, 333 (2000).  So viewed, the evidence established that husband initiated divorce proceedings on September 3, 1998.  On October 13, 1998, the trial court entered a consent pendente lite order reflecting the terms of an agreement executed by the parties when they separated.  The trial court set a trial date for July 7, 1999.  On May 27, 1999 wife and her attorney, Richard Byrd, met in Byrd's conference room with husband and his attorney, Eric Schell, to negotiate a settlement of the issues arising from the dissolution of the parties' marriage.  Based on the discussions at that conference, Byrd submitted a letter on behalf of wife to Schell on June 23, 1999 setting forth wife's proposals for a settlement.

Thereafter, Byrd drafted and submitted to Schell a formal eighteen-page property settlement agreement reviewed and approved, but not executed, by wife.  That draft agreement included designated spaces at the end of the document for the parties' respective signatures and attestation clauses for notarization of those signatures.  The paragraph immediately preceding the spaces for the parties' signatures read:

> IN WITNESS WHEREOF, the parties hereto, after free and full discussion of the terms contained herein and with an understanding of the meaning and intent of those terms and provisions, have this day first mentioned placed their signatures and seals upon this Agreement and by so signing they hereby agree with all the terms and provisions thereof.

Husband rejected the proposed property settlement agreement.

Following a continuance of the trial date to November 1, 1999, Byrd drafted and submitted to Schell a second formal eighteen-page property settlement agreement reviewed and approved, but not executed, by wife.  The second draft, like the first proposed agreement, provided spaces for the parties' signatures and for notarization of those signatures.  It also included a paragraph, immediately preceding the signature lines, that was identical to the paragraph quoted above from the first proposed agreement.  Husband did not accept the second proposed property settlement agreement.

No final agreement having been reached, a second negotiation meeting was held on October 27, 1999.  Husband,

Schell, and Byrd attended the meeting in the conference room at the offices of Byrd's firm. Wife chose not to attend the meeting, "because she didn't want to be in the same room with her husband." She instead made herself available to Byrd by telephone. Byrd left the meeting and telephoned wife from his private office periodically throughout the meeting.

Byrd testified that, during the meeting, he, Schell, and husband went item-by-item through the issues and that he discussed with wife on the telephone everything he discussed with Schell and husband. By Byrd's count, he spoke with wife "every ten minutes" during the meeting, at least ten times. "[T]here were," according to Byrd, "various offers back and forth to settle the issues."

After approximately four hours of negotiations, Byrd returned to the conference room after speaking with wife and told Schell and husband that wife had agreed to sell the house and divide the net proceeds evenly. After conferring with husband, Schell replied that wife would have to be responsible for one-half of the mortgage payment, pending sale of the house. Byrd responded, "I didn't talk to her about that. I don't have agreement on it. I'm going to have to get back to her, and see if she will." Byrd then left the conference room to call the wife regarding that issue, which, in Byrd's opinion, "was the only unsettled part of the negotiations, at that moment." While speaking on the phone with wife, Byrd became upset because he

thought wife was changing her mind about issues that were already settled and raising other matters that were beyond the focus of the current negotiation. He put the phone down, threw a cup through the wall of his office, and left the building without returning to the meeting.

The next day, having received an e-mail from wife that he believed expressly authorized and directed him to settle the case, Byrd drafted, signed, and transmitted to Schell the subject two-page final settlement agreement entitled "Agreement: Walson v. Walson." Wife did not see the agreement before Byrd signed it and sent it to Schell. Prior to signing and sending the agreement, Byrd had attempted to call wife three times to review the document he had prepared, but she did not return his calls. Following transmission of the document to Schell, counsel notified the court that the case was settled and could be removed from the trial docket.

The following day, wife went to Byrd's office expecting to review a draft of the "fully typed out property settlement agreement." Instead, she was given a copy of the agreement signed on her behalf by Byrd. That agreement, according to wife, did not represent what she had agreed to, did not contain many of the items in the earlier proposed property settlement agreements that she expected to be included in the final agreement, and was signed by Byrd without her authority or consent. Wife testified that, had she, as expected, been given the opportunity to review the agreement signed by Byrd, she would not have approved or signed it.

On November 11, 1999 wife filed an objection to entry of a final decree of divorce, wherein she challenged the agreement signed by Byrd as not being a full and final agreement of all property distribution issues arising out of the marriage. An ore tenus hearing on wife's objection was held on April 19, 2000. The trial court held that, although wife had not expressly or impliedly authorized Byrd to execute the agreement, wife was bound by the terms of the agreement because Byrd had apparent authority to execute the agreement on her behalf. In finding that Byrd had apparent authority to sign the document, the court relied on the Supreme Court's decision in Singer Sewing Machine Co. v. Ferrell, 144 Va. 395, 132 S.E. 312 (1926). The trial court entered an order memorializing its ruling on May 23, 2000.

A final decree of divorce, affirming and incorporating the agreement, was entered by Judge M. Langhorne Keith on June 22, 2000. Wife now appeals from the trial court's order of May 23, 2000, entered by Judge Arthur B. Vieregg, Jr., finding her bound by the settlement agreement signed by her attorney.

## II. ANALYSIS

The sole issue on appeal is whether the trial court erred in finding Byrd had apparent authority to execute the subject agreement on wife's behalf.[2] We will affirm the trial court's

---

[2] Because neither wife nor husband challenges the trial court's finding that Byrd did not have express or implied

decision unless it was plainly wrong or without evidence to support it.  See Lapidus v. Lapidus, 226 Va. 575, 580, 311 S.E.2d 786, 789 (1984) (noting that a court's finding based on evidence heard ore tenus will not be disturbed unless plainly wrong or unsupported by the evidence).

Husband argues that Singer controls the outcome of this case.  The Virginia Supreme Court stated in Singer that

> "it is well settled that while a compromise
> made by an attorney without authority or in
> violation of his client's commands will not
> be enforced to the client's injury, yet if
> the authority of the attorney be apparent,
> then his client will be bound, unless the
> compromise possessed such elements of
> intrinsic unfairness as to provoke inquiry
> or imply fraud."

144 Va. at 403-04, 132 S.E. at 315 (quoting Black v. Rogers, 75 Mo. 441 (1882)).  The Court went on to describe apparent authority as follows:

> "[A]s between the principal and agent and
> third persons, the mutual rights and
> liabilities are governed by the apparent
> scope of the agent's authority, which is
> that authority which the principal has held
> the agent out as possessing, or which he has
> permitted the agent to represent that he
> possesses, and which the principal is
> estopped to deny.  The apparent authority,
> so far as third persons are concerned, is
> the real authority, and when a third person
> has ascertained the apparent authority with
> which the principal has clothed the agent,
> he is under no obligation to inquire into
> the agent's actual authority."

---

authority to sign the agreement on wife's behalf, we will not address those two bases of authority.

Id. at 404, 132 S.E. at 315 (quoting J.C. Lysle Milling Co. v. S.W. Holt & Co., 122 Va. 565, 571–72, 95 S.E. 414, 415 (1918)). The Court further explained:

> "Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exists, in all respects as if the requisite power had been given in the most formal manner. If he had justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it. If business had been transacted in certain cases, it is implied that the like business may be transacted in others. The inference to be drawn is that everything fairly within the scope of the powers exercised in the past may be done in the future, until notice of revocation or disclaimer is brought home to those whose interests are concerned. Under such circumstances, the presence or absence of authority in point of fact is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same."

Id. at 404–05, 132 S.E. at 315 (quoting Bronson v. Chappell, 79 U.S. 681, 683 (1870)).

Here, there is no suggestion that fraud was practiced on wife in reaching the settlement agreement or that the agreement executed by Byrd was intrinsically unfair. Therefore, husband argues, if wife, by word or act, clothed Byrd with apparent authority to execute the settlement agreement on her behalf, husband and Schell could rely on such authority regardless of whether Byrd had wife's actual authority, and wife would be bound by the agreement.

Viewing the record in the light most favorable to husband, we find it devoid of any verbal or nonverbal representations by wife that could reasonably lead husband or Schell to conclude that Byrd had wife's authority to sign the final property settlement agreement on her behalf. The record discloses no direct communications between wife and husband or between wife and Schell regarding Byrd's authority.[3] Through her conduct, wife plainly held Byrd out as possessing the authority to conduct settlement negotiations on her behalf. She permitted him to attend the two negotiation meetings and to relay her offers and counteroffers to husband and Schell, as well as her rejections and acceptances of husband's offers and counteroffers. However, nothing in the record indicates that

---

[3] The record contains no evidence from husband or his attorney as to how they ascertained the apparent authority with which they assert wife clothed Byrd. Neither testified at the hearing.

wife held out Byrd as possessing the authority to execute the final property settlement agreement on her behalf.

At the ore tenus hearing in this case, Byrd recognized that wife "never gave [him] any authority to settle the case without her consent."  Wife, rather than Byrd, was clearly in charge of the negotiations.  It was unmistakably evident at the second negotiation meeting that Byrd had no authority to act on his own. He could not accept husband's counteroffer without first calling wife to obtain her assent.

Moreover, the two draft formal property settlement agreements sent by Byrd, with wife's approval, to Schell in the past were indicative of Byrd's limited authority.  Those proposed agreements, meant to be signed by the parties, clearly manifested to husband and Schell wife's intention that she, rather than Byrd, would sign any final settlement agreement.

In Singer, the Supreme Court held that plaintiff's attorney had apparent authority to settle the case because he "consulted with his client relative to the compromise in the presence of the defendant and returned with assent."  144 Va. at 404, 132 S.E. at 314.  In the instant case, wife was not in the presence of husband and his attorney when Byrd consulted with her relative to the settlement or when Byrd returned with her purported assent. Indeed, from Schell's standpoint, not only was Byrd's consultation with wife not in Schell's presence, Byrd's belated return with wife's alleged assent came only after Byrd had left the negotiation meeting the previous night to call wife and had, without explanation, never returned to the meeting.  We believe that, under such circumstances, husband and Schell's reliance on

Byrd's alleged authority to execute the settlement agreement was not reasonably justified and, thus, was at their own peril.

We hold, therefore, that the trial court's finding that Byrd had apparent authority to sign the settlement agreement on wife's behalf is not supported by the evidence. Accordingly, we reverse the trial court's decision finding wife bound by the property settlement agreement signed by her attorney and remand the case for further proceedings.

<u>Reversed and remanded.</u>

Annunziata, J., dissenting.

I respectfully dissent from the majority's decision.  I find that the evidence in this case sufficiently supports the trial court's finding that wife clothed her attorney with apparent authority to enter into a binding final settlement agreement on her behalf.  In the context of an attorney's authority to bind a client to an agreement or stipulation, traditional agency principles apply.  See Edwards v. Born, Inc., 792 F.2d 387, 389 (3rd Cir. 1986); see also Virginia Electric & Power Co. v. Bowers, 181 Va. 542, 547, 25 S.E.2d 361, 363 (1943) (noting that "an attorney is the agent of his client").  Accordingly, the attorney/agent has three types of authority under which action may be taken on behalf of the client/principal: express, implied, and apparent.  Restatement (Second) of Agency § 7, 8 (1958).

A client may be bound where the attorney acted with the apparent authority to bind the client.  See Singer Sewing Machine Co. v. Ferrell, 144 Va. 395, 132 S.E. 312 (1926) (holding that the client, by her actions, clothed her attorney with apparent authority to settle her claim); Restatement (Second) of Agency § 8 (1958).  In Singer, the Virginia Supreme Court described the principle of apparent authority:

> "[A]s between the principal and agent and
> third persons, the mutual rights and
> liabilities are governed by the apparent
> scope of the agent's authority, which is

> that authority which the principal has held
> the agent out as possessing, or which he has
> permitted the agent to represent that he
> possesses, and which the principal is
> estopped to deny.  The apparent authority,
> so far as third persons are concerned, is
> the real authority, and when a third person
> has ascertained the apparent authority with
> which the principal has clothed the agent,
> he is under no obligation to inquire into
> the agent's actual authority."

144 Va. at 404, 132 S.E. at 315 (quoting J.C. Lysle Milling Co. v. S.W. Holt & Co., 122 Va. 565, 571-72, 95 S.E. 414, 415 (1918)); see also National Labor Relations Board v. Donkin's Inn, Inc., 532 F.2d 138, 141 (5th Cir. 1976) ("'Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have.'" (citation omitted)).  Therefore, if the principal, by word or act, cloaks the agent with apparent authority, third persons may rely on such authority unless "'the compromise possessed such elements of intrinsic unfairness as to provoke inquiry or imply fraud.'"  Singer, 144 Va. at 404, 132 S.E. at 315 (citation omitted).

Wife asserts that in Dawson v. Hotchkiss, the Virginia Supreme Court abandoned the principle it enunciated in Singer that a client may be bound by a settlement entered into by an attorney where the client cloaks the attorney with apparent authority.  160 Va. 577, 169 S.E. 564 (1933).  Wife misconstrues Dawson.  In Dawson, the Court conducted an extensive factual

analysis to determine whether the attorney had apparent authority to enter an agreement on behalf of the client. Dawson, 160 Va. at 582, 169 S.E. at 566. The Supreme Court concluded that, in "light of all the facts and circumstances shown by the evidence," the attorney did not have "apparent authority to make a binding contract for [the client]." Id. at 586, 169 S.E. at 567. The Supreme Court thus affirmed the legal theory of apparent authority in the context of an attorney/client relationship, but found the evidence failed to support a finding of apparent authority in that case. Furthermore, the position enunciated in Singer and accepted in Dawson is consistent with that taken in numerous jurisdictions.[4]

---

[4] Several of our sister courts have held that apparent authority is a valid legal ground for binding a client to a final settlement entered into by the client's attorney. Columbus-America Discovery Group v. Atlantic Mut. Ins., 203 F.3d 291, 298 (4th Cir. 2000) ("As a general rule, counsel of record have the apparent authority to settle litigation on behalf of their client."); Fennell v. TLB Kent Co., 865 F.2d 498 (2nd Cir. 1989); Edwards v. Born, Inc., 792 F.2d 387, 390 (3rd Cir. 1986) (holding "that enforcing settlement agreements on the basis of apparent authority is consistent with the principles of agency law, the policies favoring settlements generally, and the notions of fairness to the parties in the adjudicatory process," and remanding for a factual determination of apparent authority); Blanton v. Womancare, Inc., 696 P.2d 645 (Cal. 1985); Ballard v. Williams, 476 S.E.2d 783, 785 (Ga. 1997) ("[A]n attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties." (citation omitted)); Scott v. Randle, 697 N.E.2d 60, 67 (Ind. Ct. App. 1998) (finding attorney had apparent authority to execute a binding settlement agreement where clients supported attorney's efforts to negotiate a final settlement on their behalf); Miotk v. Rudy, 605 P.2d 587, 591 (Kan. Ct. App. 1980); Nelson v. Consumers Power Co., 497 N.W.2d 205, 206 (Mich. Ct.

In accordance with agency principles, the words and conduct of wife govern the determination of whether Byrd had apparent authority to enter the Agreement on wife's behalf. <u>See</u> Restatement (Second) of Agency § 27, cmt. a, b (1958) ("[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."). The conduct of her agent, Byrd, is not material to the inquiry.

Analyzing the evidence in light of these principles, the trial court concluded that wife clothed Byrd with apparent authority to execute the agreement on her behalf:

---

App. 1993) (holding that "an attorney, acting solely in the interest of a client and without any improper motives, has the apparent authority to settle a lawsuit on behalf of the client."); <u>Rosenblum v. Jacks or Better of America West, Inc.</u>, 745 S.W.2d 754, 760-63 (Mo. Ct. App. 1998); <u>Amatuzzo v. Kozmiuk</u>, 703 A.2d 9 (N.J. Super. Ct. App. Div. 1997); <u>Hallock v. State</u>, 485 N.Y.S.2d 510, 513-14 (N.Y. 1984); <u>Kaiser Foundation Health Plan of the Northwest v. Doe</u>, 903 P.2d 375, 379 (Or. Ct. App. 1995) (finding that defendant had vested her attorney with apparent authority to bind her to final settlement with plaintiff), <u>modified on other grounds</u>, 908 P.2d 850 (Or. Ct. App. 1996); <u>Southwestern Bell Telephone Co. v. Vidrine</u>, 610 S.W.2d 803 (Tex. Ct. App. 1980); <u>New England Educational Training Service, Inc. v. Silver Street Partnership</u>, 528 A.2d 1117, 1119-21 (Vt. 1987) (same); <u>see</u> <u>also</u> <u>Rest. of Law Governing Lawyers</u> § 27 (1998) ("A lawyer's act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.").

> Mrs. Walson plainly held Mr. Byrd out as having authority to negotiate this case. She authorized him to attend the October 27th meeting. All understood that she chose not to attend because of her supposed dislike of her husband, but that arrangements were made for her to communicate with her attorney during the course of that meeting. That Mr. Byrd did participate and, further, that he continually conferred with her by telephone in the course of this lengthy meeting. She did nothing to inform her former husband or his attorney of any restrictions on Mr. Byrd's authority.

Because the trial court's finding that Byrd had apparent authority is one of fact, see Nolde Bros. v. Chalkley, 184 Va. 553, 567, 35 S.E.2d 827, 833 (1945), we must sustain that finding unless we conclude that it is plainly wrong or without evidentiary support. Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986); Code § 8.01-680. "It is well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact." Parish v. Spaulding, 26 Va. App. 566, 575, 496 S.E.2d 91, 95 (1998), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999). Therefore, we "review the evidence in the light most favorable to [husband], the party prevailing below and grant all reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999), and we do "not substitute [our] judgment for the trial court's determination unless we find that the testimony relied upon by the trial court

is inherently incredible," Parish, 26 Va. App. at 575, 496 S.E.2d at 95.

I find that the evidence amply supports the trial court's finding that wife clothed Byrd with apparent authority to enter into a final settlement agreement on her behalf. The negotiations conducted by the parties over a six-month period were manifestly characterized by Byrd acting on wife's behalf to reach a final settlement. In May 1999, wife accompanied Byrd to the first negotiation meeting for the express purpose of obtaining an agreement on the disputed property issues. Between that meeting and the October 1999 meeting, wife consistently communicated her proposals and rejection of husband's proposals to husband's counsel through Byrd's agency. These communications were made on her behalf and in her absence.

Wife acknowledged that the purpose of the October settlement negotiation meeting was to try "to resolve [the] matter" prior to the trial, which was scheduled to begin the following Monday. She admitted authorizing Byrd to attend the October meeting "on her behalf," for the specific purpose of negotiating a settlement of all issues in dispute. To that end, wife employed Byrd to communicate her offers and rejection of counteroffers to opposing counsel and his client, a function he had filled during the six-month negotiation period.

Byrd testified that he spoke with wife on the phone concerning each issue presented at the October meeting. At the

end of the meeting, Byrd had spoken with wife at least ten times, and the parties had reached an agreement as to all terms except who would pay the mortgage while wife lived in the house pending its sale. Byrd left the meeting to communicate husband's counteroffer to wife, a course he had been following throughout the afternoon. Byrd did not return to the meeting until the following day, when he communicated wife's acceptance of husband's counteroffer to husband's counsel through a stipulation detailing the terms of the agreement. Both attorneys then signed the agreement.

Because wife, throughout the settlement negotiations, held out Byrd as having the authority to communicate wife's offers and rejection of counteroffers, husband and his counsel reasonably believed that Byrd had the authority to communicate wife's acceptance of husband's counteroffer. See Scott v. Randle, 697 N.E.2d 60, 67 (1998) ("[W]hen a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal. In such instance, the conduct of the principal constitutes the requisite manifestation or communication, although indirect.").

Wife relies on Auvil v. Grafton Homes, Inc., 92 F.3d 226 (4th Cir. 1996), to support her contention that the trial court erred in finding that Byrd had apparent authority to bind her to a final settlement. In Auvil, the court found that "[t]he

authority to negotiate . . . is far different from the authority to agree to a specific settlement." Auvil, 92 F.3d at 230. Wife's reliance on Auvil is misplaced. Auvil merely restates the need for evidence demonstrating that the client clothed the attorney with apparent authority to bind her to a final settlement. Id. at 230 ("An agent's authority must be conferred by some manifestation by the principal that the agent is authorized to act on the principal's behalf." (emphasis in original) (citation omitted)).

In this case, wife's actions clothed Byrd with authority to reach final settlement on her behalf. Several of the settlement proposals that wife authorized Byrd to present during the four hours of negotiations were full and complete, such that, if accepted by husband, they would have bound wife to a final settlement. By her actions and conduct, wife led husband and his counsel to reasonably believe that Byrd had authority to finalize the negotiations. Byrd, thus, had apparent authority to bind wife to a final settlement agreement.

Furthermore, the parties are bound despite the fact that they did not execute a written agreement. The evidence, viewed in the light most favorable to husband, demonstrates that the parties did not contemplate that a written agreement be executed as a condition precedent to their being bound. See Richardson v. Richardson, 10 Va. App. 391, 396, 392 S.E.2d 688, 690 (1990) ("Where parties involved in contract negotiations do not

expressly state that the validity of an agreement between them is subject to the preparation, approval, and signing of a formal written contract, it is a question of fact whether they intended that no contract would exist until a written agreement was executed."). Byrd testified that a formal property settlement agreement was not intended. Rather, he and husband's counsel had "discussed it, and just picked a method of either drafting a decree, and putting it in the decree, or doing it by stipulation, to be put into the decree." The trial court did not credit wife's testimony that she intended that a formal property settlement agreement be drafted and signed by both parties before either party would be bound. We are bound by the trial court's determination of fact on this issue. Anderson, 29 Va. App. at 686, 514 S.E.2d at 376 (holding that trier of fact determines credibility of witnesses). Therefore, despite the absence of a written agreement signed by both parties, once Byrd communicated, with apparent authority, to husband's counsel that wife had accepted husband's counteroffer, both parties were bound. Id. at 394, 392 S.E.2d at 689.

In sum, I find that the holding in Singer that an attorney may bind his or her client to a final settlement on the basis of apparent authority remains controlling Virginia law. I also find there is sufficient evidence to support the trial court's decision that Byrd had apparent authority to bind wife to a final settlement. Because both attorneys signed the stipulation

with legal authority, wife is bound by the agreement.  I, therefore, would affirm the decision of the trial court.