UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia


BRENT RAY DOSS

MEMORANDUM OPINION* BY
v.        Record No. 0421-17-3        JUDGE ROSSIE D. ALSTON, JR.
JUNE 12, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
G. Carter Greer, Judge

Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on brief), for
appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Brent Ray Doss (appellant) argues that the trial court erred when it convicted him of

grand larceny of a motor vehicle pursuant to Code § 18.2-95.  Appellant specifically contends

that the trial court incorrectly concluded that William Doss had implied authority to sign a motor

vehicle title in the title holder's name.  Accordingly, appellant argues that title did not pass.

Thus, appellant could not have committed grand larceny when he took the motor vehicle.  We

disagree.

BACKGROUND

The factual background of the case is difficult to follow but is critical to understand the

interconnections of the individuals involved.  Appellant's girlfriend, Leslie Biggs (Biggs), owned

a 1975 pickup truck.  Appellant expressed interest in trading Biggs' truck for a 1995 Ford

Mustang owned by Kenneth Mitchem, an acquaintance.  They agreed to meet to discuss a

---

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"straight swap; car for truck." On May 6, 2016, appellant, Biggs, and appellant's father, William Doss (William), arrived at Mitchem's home in Biggs' truck and another vehicle. This was going to be an "as-is" trade. Appellant took Biggs on a five-minute test-drive of the Mustang. When they returned, Mitchem asked "do you all want to trade?" Appellant replied in the affirmative.

At that point, William began to clean out the truck. Mitchem went inside his home to retrieve title to the Mustang and a pen. When Mitchem returned, he signed the title to the Mustang and handed it to William. William handed Mitchem the title to the truck, which indicated that the titleholder was Biggs. William asked Mitchem "do you need me to sign [the title]?" Mitchem replied "Yes sir, I won't trade with you unless [the truck] title is signed." Accordingly, William signed the truck title; the truck title reflected a scratched out signature, a signature of one "Leslie Biggs," and then the printed name of "Nicole Leslie Biggs." Biggs and appellant were both present during this exchange. At this point, the truck's doors were open. Mitchem stood on the driver's side of the truck and William stood on the passenger's side. Appellant and Biggs stood near the Mustang, which was about five feet behind William. The evidence established that both appellant and Biggs had an unobstructed view of the transaction. William handed the signed truck title to Mitchem. Mitchem was then given one key to the truck. At this point, appellant drove away in the Mustang with William. Biggs followed behind in the vehicle she arrived in. The truck remained parked in Mitchem's driveway.

The next day at about 4:30-5:00 p.m., Mitchem was on his way home from the store in a different vehicle. Mitchem observed appellant driving towards him in the truck. When Mitchem returned to his home, he reported the incident to the police.

Officer Hudson responded to Mitchem's report. On the way to Mitchem's home, Hudson called Mitchem. During the call, Mitchem provided an address noted on the truck title. Hudson

diverted to that address and observed a truck matching the description Mitchem gave at that address. The truck was parked behind a trailer home and was locked behind a gate.

After meeting with Mitchem at his residence, Hudson returned to the truck's location and called a cell phone number Mitchem had previously provided to him. Hudson called the cell phone number and spoke with appellant and Biggs. Appellant explained that he "felt like he could go get the truck" because Biggs did not sign the truck title; William did. Appellant also said that he believed the signature on the truck title was not good, and thus the title did not pass. After Hudson indicated he was about to execute a search warrant, appellant indicated that someone would come to the trailer home location to unlock the gate. Five minutes later, Biggs arrived, unlocked the gate, and handed Hudson a spare key to the truck. Subsequently, Hudson swore out a warrant for appellant's arrest. Appellant was indicted for grand larceny of a motor vehicle, the property of Mitchem, in violation of Code § 18.2-95.

At trial, Mitchem and Officer Hudson detailed the events as described. Mitchem further testified that the value of the truck was $3,500 and that he did not give appellant permission to take the truck.

At the conclusion of the Commonwealth's case, appellant made a motion to strike, arguing that the Commonwealth did not show that Biggs impliedly authorized William to sign the truck title nor that appellant had the requisite larcenous intent. Appellant also argued he had a "good-faith or reasonable belief" that no valid transfer of title occurred. The Commonwealth responded that Biggs impliedly authorized William to sign the truck title on her behalf and that appellant's intent was clear. Moreover, if the transfer was invalid, appellant's mistaken belief was not grounded in good faith. The trial court denied the motion.

Appellant testified in his own behalf. Appellant stated that he observed a conversation between Mitchem and William. He denied that anyone signed the truck title and maintained that

Biggs never exited the vehicle, that Biggs did not sign the truck title, and that Biggs never gave anyone else permission to sign the truck title. Further, appellant stated that Biggs and Mitchem did not even speak with one another. In appellant's version of events, he and William test-drove the Mustang, which broke down. Appellant then stated he called Mitchem to explain what had happened. Appellant claimed that he drove the truck off Mitchem's property the next day because "the deal was never made." On cross-examination, appellant acknowledged that he was a convicted felon and has been convicted of stealing.

Mitchem was recalled by the Commonwealth; he strongly disputed appellant's version of events and once again described the curious circumstances of the transaction.

Appellant renewed his motion to strike in closing argument. The Commonwealth reiterated its response to appellant's first motion to strike.

The trial court found that Mitchem was a credible witness and declared that this was a "successfully completed" transaction. The trial court discredited appellant's testimony, stating that his testimony made "absolutely no sense." The trial court found Biggs impliedly authorized William to sign the truck title pursuant to the doctrine of "amanuensis."[1] The trial court supported this determination with the following facts: Biggs was present during the transaction—she stood five feet away, appellant and Biggs test-drove the vehicle, and appellant told Mitchem he wanted the vehicle. The trial court inferred that Biggs "was there within earshot and that she heard" appellant "expressly [telling] . . . Mitchem that he wanted the vehicle." Further, Biggs did not disagree with or object to William signing the truck title. The trial court also found that it "can and does infer that at the time [appellant] took the [truck], that he did so with the intent to deprive [] Mitchem of his property permanently." The trial court

---

[1] In so finding, the trial court referenced the ancient doctrine of amanuensis in which authority to sign a document can be impliedly given. See e.g., Ferguson v. Ferguson, 187 Va. 581, 592, 47 S.E.2d 346, 352 (1948).

supported that determination with the following facts: appellant did not call Mitchem before taking the truck, and appellant "simply had a case of buyer's remorse and decided that he had gotten the raw end of the deal." Appellant took the truck "knowing full well that the deal had been consummated . . . and that the truck . . . belonged to [] Mitchem."

The trial court found appellant guilty and convicted him of grand larceny of a motor vehicle. Appellant was sentenced to ten years' incarceration with eight years suspended.

Now comes this appeal.

ANALYSIS

"In a challenge to the sufficiency of the evidence, 'we presume the judgment of the trial court to be correct, and will not set it aside unless it is plainly wrong or without evidence to support it.'" Marsh v. Commonwealth, 57 Va. App. 654, 650, 704 S.E.2d 624, 627 (2011) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). "The reviewing court, under this standard, does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis and citation omitted)). "Instead, the reviewing court asks whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 319) (emphasis omitted). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Baylor v. Commonwealth, 55 Va. App. 82, 87, 683 S.E.2d 843, 845 (2009) (citing Jackson, 443 U.S. at 319).

Appellant's contention that the evidence was insufficient to sustain a conviction of grand larceny of a motor vehicle rests on his belief that the trial court erred in determining that Biggs impliedly authorized William to sign title to the truck. Absent that authority, according to

appellant, title to the truck did not pass; thus, appellant could not have committed grand larceny of a motor vehicle when he took the truck from Mitchem. We disagree with appellant's contention.

"In Virginia, larceny is a common law crime. We have defined larceny as 'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" Carter v. Commonwealth, 280 Va. 100, 104-05, 694 S.E.2d 590, 593 (2010) (*en banc*) (quoting Skeeter v. Commonwealth, 217 Va. App. 722, 725, 232 S.E.2d 756, 758 (1977)). "Under Code § 18.2-95, grand larceny includes the taking, not from the person of another, of goods that have a value of $200 or more." Tarpley v. Commonwealth, 261 Va. 251, 257, 542 S.E.2d 761, 764 (2001). Stated simply, the Commonwealth must prove that appellant "wrongful[ly] or fraudulent[ly] [took] another's property [valued at $200 or more] without [the owner's] permission and with the intent to deprive the owner of that property permanently." Id. at 251, 542 S.E.2d at 763-64. "The . . . intent to steal must exist at the time the seized goods are moved." Britt v. Commonwealth, 276 Va. 569, 575, 667 S.E.2d 763, 766 (2008) (citing McAlevy v. Commonwealth, 44 Va. App. 318, 322, 605 S.E.2d 283, 285 (2004), aff'd, 270 Va. 378, 380, 620 S.E.2d 758, 760 (2005)). "Intent, like any element of a crime, may be proved by circumstantial evidence." Creamer v. Commonwealth, 64 Va. App. 185, 205, 767 S.E.2d 226, 235 (2015) (citing Simon v. Commonwealth, 58 Va. App. 194, 206, 708 S.E.2d 245, 251 (2011)). "Circumstantial evidence of intent may include a person's statements and conduct." Id. We consider the evidence in the light most favorable to the Commonwealth. Carter, 280 Va. at 103, 694 S.E.2d at 592.

In the analysis of implied authority, we turn to well-settled legal principles. "The party who alleges an agency relationship has the burden of proving it." Hartzell Fan, Inc. v. Waco,

Inc., 256 Va. 294, 300, 505 S.E.2d 196, 200 (1998) (citing State Farm Mut. Auto. Ins. Co. v. Weisman, 247 Va. 199, 203, 441 S.E.2d 16, 19 (1994)). "Agency is defined as a fiduciary relationship arising from 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf and subject to his control, and the agreement by the [agent] so to act.'" Id. (quoting Allen v. Lindstrom, 237 Va. 489, 496, 379 S.E.2d 450, 454 (1989)). "The manifestation may be made by words or other conduct, including acquiescence." Restatement (Second) of Agency § 7 cmt. c. "[M]ost authority is created by implication . . . . These powers are all implied or inferred from the from the words used, from customs[,] and from the relations of the parties." Id. This determination will be affirmed "unless it was plainly wrong or without evidence to support it." Walson v. Walson, 37 Va. App. 208, 214, 556 S.E.2d 53, 56 (2001) (citing Lapidus v. Lapidus, 226 Va. 575, 580, 311 S.E.2d 786, 789 (1984) (noting that this is true for determinations based on evidence heard *ore tenus*)).

We are compelled to note that appellant conflates the concepts of implied authority and apparent authority. On brief, appellant relies on Walson, 37 Va. App. 208, 556 S.E.2d 53. Walson is inapplicable because there, we analyzed the legal concept of apparent authority, not implied authority. See id. at 214, 556 S.E.2d at 55-56 (noting the sole issue on appeal involves determining whether apparent authority existed). Implied authority, at issue in the instant case, is a form of actual authority, which is "the power of the agent to affect the legal relations of the principal by acts done in accordance with *the principal's manifestations of consent to him*." Restatement (Second) of Agency § 7 (emphasis added). Apparent authority, on the other hand, "results from a manifestation by a person that another is his agent, *the manifestation being made to a third person and not*, as when authority is created, *to the agent*." Restatement (Second) of Agency § 8 cmt. a.

With this critical distinction in mind, we note that the trial court ruled that Biggs *impliedly* authorized (rather than apparently authorized) William to sign the truck title. In our assessment of the evidence at trial, the relationship among the parties supported the trial court's determination; Biggs was appellant's girlfriend and William was appellant's father. Biggs' behavior throughout the transaction provided additional facts supporting the concept of implied authority. Appellant and Biggs test-drove the Mustang. Upon their return, she overheard appellant affirm he wanted to make the trade. Biggs was present when William handed Mitchem the truck title and when Mitchem informed William that the truck title must be signed. Biggs observed William sign Biggs' name. Biggs stood five feet away as the transaction was consummated. Her view of the transaction was unobstructed because the truck's doors were open. Under the Restatement (Second) of Agency § 26 cmt. d, manifestation of implied authority "may consist of [the principal's] failure to object to unauthorized conduct." Further, "the agent can reasonably infer that the principal wishes him to continue so to act" when "in view of the relations between the principal and agent and all other circumstances, a reasonable person in the position of the principal knowing of unauthorized acts and not consenting to their continuance would do something to indicate his dissent." Id. In this instance, Biggs was the principal and William was the agent. From these facts, a fact-finder could conclude that William reasonably inferred that Biggs "wished him to continue . . . to act" because Biggs, the titleholder to the truck, witnessed William signing the truck title. A "reasonable person" in Biggs' position that did not consent to William's conduct "would do something to indicate his [or her] dissent." Biggs did not object to or indicate disproval of William's conduct. After the transaction was completed, Mitchem was given a key to the truck. Biggs left Mitchem's residence along with William and appellant. The truck remained parked at Mitchem's.

Suffice it to say that the factual background for this case is complicated and somewhat convoluted. However, considering the relationships between the parties and Biggs' conduct, the trial court was not plainly wrong and had evidence to support its determination that Biggs impliedly authorized William to sign the truck title in her name.

The trial court also ruled that appellant was guilty of grand larceny of a motor vehicle. The trial court found that appellant possessed the requisite larcenous intent. Even though appellant testified that no one signed the title, and thus "the deal was never made," the trial court, the sole judge of witness credibility, found his testimony incredible. Thus, the trial court reasonably concluded that appellant knew the transaction was "successfully completed" and that the truck was Mitchem's property, when he returned with a second key to the truck and drove the truck off of Mitchem's property. Appellant did not inform Mitchem of his plans and did not have Mitchem's permission to take the truck. Law enforcement subsequently found the truck behind a locked gate and largely obscured from view. Further, to support the grand larceny conviction, Mitchem testified that the value of the truck was over $200. Thus, the trial court was not plainly wrong and had evidence to support its determination that appellant was guilty of grand larceny of a motor vehicle.

CONCLUSION

The trial court was not plainly wrong, and the evidence supported its determinations that Biggs impliedly authorized William to sign the truck title and that there was sufficient evidence to convict appellant of grand larceny of a motor vehicle. Accordingly, we affirm the trial court.

Affirmed.